**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| In re:  RECOVERY LAW GROUP, APC, | Case No. 24-301-KRH |
| D/B/A WAJDA LAW GROUP, APC, | Miscellaneous Proceeding |
| D/B/A WAJDA & ASSOCIATES, P.C., | |

| | |
|---|---|
| In re:  TRISHA LYNN LINDERMAN, | Case No. 24-31714-KRH |
| Debtor, | Chapter 7 |

| | |
|---|---|
| In re:  JEANNETTE LEVETAS PAULEY, | Case No. 24-32478-KRH |
| Debtor, | Chapter 7 |

| | |
|---|---|
| In re:  JOANN ELIZABETH RUSSELL, | Case No. 24-32957-KLP |
| Debtor, | Chapter 7 |

| | |
|---|---|
| In re:  SHAWN CORIGAN LEE, | Case No. 24-32962-KRH |
| Debtor, | Chapter 7 |

| | |
|---|---|
| In re:  JENNIFER REBECCA POULSTON, | Case No. 24-33369-KRH |
| Debtor, | Chapter 7 |

## <u>MEMORANDUM OPINION</u>

These matters come before the Court upon a myriad of pleadings filed by the Office of the
United States Trustee (the "U.S. Trustee") regarding the quality of the representation that was
received by the five consumer debtors in the above-captioned bankruptcy cases (the "Five
Consumer Bankruptcy Cases at Bar"). Each of the debtors was represented by Recovery Law
Group, APC d/b/a Wajda Law Group, APC d/b/a Wajda & Associates, P.C. ("RLG") and Thomas
Watson, Esquire ("Watson"). In the Five Consumer Bankruptcy Cases at Bar, much like those
that were before the court in the Western District of Virginia in *Robbins v. Barbour,* a
"multi-jurisdictional practice" unleashed a gallimaufry of unethical issues upon hapless clients

utilizing "the 'national law firm' business model, where law firms in distant locations around the country advertise on the internet, and then seek to retain a local attorney to become a local 'member'—albeit one with limited, if any, rights other than in the cases they actually take." *Robbins v. Barbour* (*In re Futreal*), Nos. 15-70886, 15-70885, 16-60736, 16-61448, 16-61249, 16-00701, 2016 Bankr. LEXIS 3974, at *40-42 (Bankr. W.D. Va. Nov. 15, 2016) (not reported on Westlaw).

RLG is such a multi-jurisdictional practice. In the Five Consumer Bankruptcy Cases at Bar, RLG actually "acknowledge[d] that its clients were not adequately represented." Resp. to Recommendation of the U.S. Trustee as to Monetary Sanctions ¶ 1, *In re Recovery Law Grp.*, Misc. Pro. No. 24-301-KRH, ECF No. 41 at 2. RLG admitted that it did not "provide appropriate oversight of the performance of Watson in representing [RLG's] clients." *Id*. Nevertheless, RLG tried to absolve itself of blame by pointing its finger at Watson. He was the local attorney RLG engaged to represent the clients RLG had acquired on the internet. For the reasons set forth herein, RLG and Watson share joint responsibility for the transgressions that occurred in these cases. Both "demonstrated an utter disregard" for the consumer debtors they had the honor and the privilege to represent. *In re Banner*, No. 15-31761, 2016 WL 3251886, at *9, 2016 Bankr. LEXIS 2214, at *29 (Bankr. W.D.N.C. June 2, 2016).

### *Jurisdiction*

This Court has jurisdiction over this matter pursuant to 11 U.S.C. § 105 and 28 U.S.C. §§ 151, 157(a), and 1334(a). Venue is proper pursuant to 28 U.S.C. § 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). This Memorandum Opinion constitutes

the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal

Rules of Bankruptcy Procedure.[1]

### *Findings of Fact*

### 1.     The Parties

RLG is a multi-jurisdictional law firm.  It operates in over thirty states and in approximately

ninety jurisdictions.  Watson is an attorney licensed to practice law in the Commonwealth of

Virginia.  He is admitted as a member of the bar of this Court.  Watson was employed by RLG.[2]

Together they appeared on behalf of and purported to provide legal representation for the five

consumer debtors in the Five Consumer Bankruptcy Cases at Bar (collectively, the "Affected

Debtors").  In December 2024, Michael Sandler, an attorney licensed to practice in Virginia and a

member of this Court, intervened in the Five Consumer Bankruptcy Cases at Bar, filing a notice

of appearance on behalf of the Affected Debtors.[3]  Watson has not requested or nor has he received

---

[1]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

[2]   The evidence concerning the existing relationship between RLG and Watson was somewhat muddled.  On
September 11, 2024, RLG, through its general counsel, Peter Mulcahy ("Mulcahy"), advised that Watson's
*employment* with RLG had been terminated.  Clearly, as the facts bear out, he was not terminated.  Watson, on
the other hand, testified that he had not been employed by RLG, but rather, that he was acting as a local contractor
for RLG.  Lee Ex. 105 7:17-19.

The distinction is important. If Watson was acting as an independent contractor, RLG and Watson would have
been engaged in a fee-sharing arrangement.  Any such an arrangement had to be disclosed on the Disclosure of
Compensation form required by Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy
Rules").  No such disclosure was ever made.  Accordingly, the Court finds that Watson was an employee of RLG
and that his employment was not terminated on September 11, 2024.

[3]   The findings of fact and conclusions of law relate solely to RLG and Watson, as more fully detailed herein, and
do not relate to Mr. Sandler's conduct.  The Court welcomed Mr. Sandler's appearance in these cases and has
been pleased with Mr. Sandler's representation of the Affected Debtors.  Mr. Sandler has provided every
document requested by the U.S. Trustee, has spoken with each Affected Debtor about the status of their respective
cases, has filed all the necessary amendments to the deficient Court filings, and has successfully shepherded the
Affected Debtors through to conclude their cases.  *See* Hr'g Tr. 3:8-4:5, ECF No. 55.

leave to withdraw as counsel of record for the Affected Debtors, although he no longer appears to represent them.

### 2.    RLG's Business Model

RLG acquires its clients on the internet. The banner displayed across its professionally designed website advertises "immediate access to legal advice to eliminate your debt." Recovery Law Group, http://www.recoverylawgroup.com/ (last visited Apr. 4, 2025), *archived at* https://perma.cc/C4RX-BX7W.[4] A prospective client contacting RLG initially communicates with a bankruptcy attorney who answers general bankruptcy questions. That RLG attorney is not necessarily based in the jurisdiction where the prospective client is located.[5] After a client agrees to the engagement, RLG prepares a draft bankruptcy petition that it transmits by email to the new client. *See* Lee Ex. 113; Poulston Ex. 117; Russell Ex. 120; Linderman Ex. 136. RLG instructs the new client to "[p]rint the signature pages attached to this email. Hand-sign all of the pages in th[e] document but DO NOT DATE them." Lee Ex. 113; Poulston Ex. 117; Russell Ex. 120; Linderman Ex. 136. RLG then instructs the new client to mail the executed signature pages back to RLG through the United States Postal Service. Global Ex. J.

Having procured the client's signature on the signature pages in this manner, the client is then instructed to review the draft bankruptcy petition and accompanying schedules and statement of financial affairs and "indicate changes that need to be made." Lee Ex. 113; Poulston Ex. 117; Russell Ex. 120; Linderman Ex. 136. The cover email includes links to several videos "to walk

---

[4]    The website touts the firm's "convenience, simplicity, and affordability," claiming "[w]e are always on your side and ready to provide the legal support you need." *See* Recovery Law Group, http://www.recoverylawgroup.com/ (last visited Apr. 4, 2025), *archived at* https://perma.cc/C4RX-BX7W. That was far from the experience afforded the Affected Debtors.

[5]    RLG claims that it has or is now implementing a different process in Maryland, South Carolina, Central District of Illinois, and Michigan.

you through a Bankruptcy Petition." Lee Ex. 113; Poulston Ex. 117; Russell Ex. 120; Linderman Ex. 136. No lawyer meets with the new clients to review the draft bankruptcy documents with them. This process for reviewing the bankruptcy petition, the schedules, and the statements was utilized in all Five of the Consumer Bankruptcy Cases at Bar.

"Courts have criticized similar business models for 'foster[ing] an environment of confusion, incompetence, and apathy.'" *Townson v. Sheppard* (*In re Gibson*), 658 B.R. 706, 730 (Bankr. S.D. Ga. 2024) (quoting *In re Deighan Law LLC*, 637 B.R. 888, 921 (Bankr. M.D. Ala. 2022), *amended*, MC 19-301-CLH, 2023 WL 8924747, 2023 Bankr. LEXIS 3049 (Bankr. M.D. Ala. Dec. 8, 2023)). RLG has been sanctioned by numerous courts around the country for employing this business model. *E.g.*, *In re White*, 659 B.R. 68, 71 (Bankr. D.S.C. 2024) (imposing civil penalty of $10,000 where debtor had engaged RLG to save home and case was not filed until after foreclosure); *In re Gibson*, 658 B.R. 706 (sanctioning RLG and contract attorney for, among other things, unauthorized practice of law, failure to disclose in accordance with section 329(a) and Bankruptcy Rule 2016, and making false statements in violation of section 707(b)(4)(C) and Bankruptcy Rule 9011); *In re Thomas*, 657 B.R. 613, 631 (Bankr. C.D. Ill. 2024) (denying application for compensation in full where documents contained obvious errors and inconsistencies, which "could easily have been promptly cured if not avoided altogether had [the RLG attorney] simply taken the time to give the case the necessary attention."); *In re Burnett*, No. 21-02018-dd, 2022 WL 802586, 2022 Bankr. LEXIS 684 (Bankr. D.S.C. Mar. 16, 2022) (imposing a civil penalty of $25,000 and enjoining RLG from filing future cases in the District of South Carolina); *In re Green*, Case No. 20-03190-HB, 2021 WL 5177427, 2021 Bankr. LEXIS 3059 (Bankr. D.S.C. Nov. 3, 2021) (imposing sanctions for violating section 526(a)(1), (2), and (3)(A), failing to satisfy its obligations under section 528, failing to disclose in accordance with section

329, and for charging unreasonable compensation); *In re Pearson*, Case No. 20-30077, 2020 WL 1845048, 2020 Bankr. LEXIS 972 (Bankr. N.D. Tex. Apr. 9, 2020) (issuing a show cause based on RLG's "woefully erroneous bankruptcy paperwork" and "a nonsensical plan.").

Similar proceedings were initiated against RLG (but not Watson) in the United States Bankruptcy Court for the Western District of Virginia (the "Western District Proceeding").  *See* Global Ex. 101.  The Western District Proceeding resulted with the entry of a stipulation between RLG and the Office of the U.S. Trustee[6] (the "Western District Stipulation"), which was approved by Judge Black on June 17, 2021.[7]  Global Ex. 101; Joint Stipulation of the U.S. Trustee with RLG ¶ 5, *In re Recovery Law Grp.*, Misc. Pro. No. 24-301-KRH, ECF No. 42 [hereinafter the "MP Stipulation"].  The Western District Stipulation required RLG to "immediately take all actions necessary and appropriate to obtain a Certificate of Registration from the Virginia State Bar."  Global Ex. 101 ¶ B.  Judge Black ordered that all fees paid by the debtors be refunded, and he imposed a civil penalty in the amount of $4,000.  Global Ex. 101 ¶¶ 2, 5.

The Office of the U.S. Trustee and RLG subsequently agreed to a second stipulation, which was also approved by Judge Black.  Global Ex. 102; MP Stip. ¶ 6.  RLG agreed as part of the second stipulation to cease practicing bankruptcy law in the Western District of Virginia.  Global

---

[6]   The Office of the U.S. Trustee is a part of the Department of Justice. The Attorney General appoints a U.S. Trustee for each of the various regions established by Congress around the country.  28 U.S.C. § 581.  The duties of the U.S. Trustee are set forth in 28 U.S.C. § 586.  The U.S. Trustee has a right to appear and be heard in all bankruptcy cases.  11 U.S.C. § 307.

[7]   Judge Black consolidated the contested matters pending in three separate bankruptcy cases.  Agreed Order to Consolidate Adversary Proceedings, *In re Adkins*, Case No. 20-71043-PMB (Bankr. W.D. Va. Apr. 28, 2021), ECF No. 34; *In re Stottlemyer*, Case No. 20-50669-RBC (Bankr. W.D. Va. Apr. 28, 2021), ECF No. 30; *In re Wagner*, Case No. 20-61629-RBC (Bankr. W.D. Va. Apr. 28, 2021), ECF No. 19.  Identical stipulations were entered in each of the three cases.  Stipulation of Wajda Law Group, APC & Order Resolving Mots. Filed by the U.S. Trustee to Review & Impose Civil Penalties, *In re Adkins*, Case No. 20-71043-PMB (Bankr. W.D. Va. Apr. 28, 2021), ECF No. 50; *In re Stottlemyer*, Case No. 20-50669-RBC (Bankr. W.D. Va. Jun. 17, 2021), ECF No. 31; *In re Wagner*, Case No. 20-61629-RBC (Bankr. W.D. Va. Jun. 17, 2021), ECF No. 20.  For ease of reference, citations to the Western District Stipulation will reference the stipulation entered in *In re Adkins*, Case No. 20-71043-PMB only, which was marked and admitted as Global Ex. 101 before this Court.

Ex. 102 ¶ (i).  RLG further agreed to a one-year bar from practice.  Global Ex. 102 ¶ (iv).  If RLG

wished to resume practice in the Western District after the expiration of the one-year bar, RLG

agreed to file a motion with the Court "after providing 60 days' notice prior to the filing of said

motion to the Office of the United States Trustee, and demonstrate it is in complete compliance

with [the Western District Stipulation]."  *Id.*

### 3.       The *Sorgho* Case

On October 11, 2023, RLG, by and through Watson, filed a voluntary Chapter 7 petition

on behalf of Djibril Sorgho in this Court.  *In re Sorgho*, Case No. 23-33495-KLP, ECF No. 1 (the

"Sorgho Case").  The petition date in the Sorgho Case preceded the commencement of the Five

Consumer Bankruptcy Cases at Bar. The Office of the U.S. Trustee filed a *Motion to Examine*

*Debtor's Transactions with Wajda & Associates, P.C., Wajda Law, the Recovery Law Group, and*

*Thomas Watson, Esquire, and for Return of Attorney's Fees, and Imposition of Sanctions and*

*§ 526(c) Remedies* (the "Sorgho 329 Motion") in the Sorgho Case on April 17, 2024.  MP Stip.

¶ 7; Global Ex. 103.  On May 9, 2024, Watson, acting on his own behalf and as counsel for RLG,

filed an answer to the Sorgho 329 Motion.  MP Stip. ¶ 8; Global Ex. 104.  The issues raised in the

Sorgho 329 Motion were resolved by the agreement of Watson and RLG to the terms of a proposed

consent order.  MP Stip. ¶¶ 9-10; Global Exs. 105 & 106.  On May 21, 2024, Judge Phillips entered

the consent order (the "Sorgho Consent Order").  Global Ex. 107.

The Sorgho Consent Order required RLG to refund $2,350 in fees to Mr. Sorgho.  Global

Ex. 107 ¶ 1.  It also required RLG to pay a sanction in the amount of $500 to Mr. Sorgho.[8]  *Id.* ¶ 2.

The Sorgho Consent Order further provided that

> Recovery Law Group shall not file any bankruptcy cases in [the]
> Bankruptcy Court for the Eastern District of Virginia until and

---

[8]    RLG made such payments to Mr. Sorgho.  *See* MP Stip. ¶ 15; Global Ex. 111.

> unless Debtor's Counsel complies with § 54.1-3902 of the Code of
> Virginia and Part Six, Section IV, Paragraph 14 of the Rules of the
> Supreme Court of Virginia and *actually receives* a Certificate of
> Registration from the Virginia State Bar.

*Id.* ¶ 3 (emphasis added).  The Sorgho Consent Order was endorsed by Watson on behalf of RLG,

as well as on his own behalf.  *Id.* at 3.  The Sorgho Consent Order is now a final and unappealable

order.  *See generally In re Sorgho*, Case No. 23-33495-KLP.

Notwithstanding that RLG had agreed to "immediately take all actions necessary and

appropriate to obtain a Certificate of Registration from the Virginia State Bar," Global Ex. 101

¶ B, it was not until almost three years later that RLG submitted an *Application for Certificate of

Registration for Professional Law Corporation* to the Virginia State Bar (the "VSB").  Global Ex.

110.  On September 13, 2024, RLG submitted a second such application to the VSB.  *Id.*  At the

Trial[9] of the Five Consumer Bankruptcy Cases at Bar, Mulcahy testified that RLG had finally

received the certificate of registration from the VSB.  Mulcahy could not provide the date of its

receipt nor did RLG seek to admit a copy of the certificate into evidence.  *See* Jan. 21, 2025, Hr'g

Tr. 33:23-34:16, 42:22-43:3.  RLG had the burden of proving at Trial that it had "actually

receive[d] a Certificate of Registration from the Virginia State Bar."  The best evidence the Court

has is the records of the VSB, which revealed that RLG was not registered with the VSB as of

October 24, 2024.  Global Ex. 110.

Although it lacked the requisite certificate of registration with the VSB, RLG, through

Watson, proceeded to file five Chapter 7 consumer bankruptcy cases in contravention of the

Sorgho Consent Order:  (1) Richard Gilliam Seeley, Jr. ("Mr. Seeley")[10] filed on June 20, 2024,

---

[9]    As hereinafter defined, *see infra* p. 63.

[10]   Mr. Seeley's case was not included in the miscellaneous preceding nor was it one of the Five Consumer
Bankruptcy Cases at Bar.

Global Ex. 112; (2) Jeannette Levetas Pauley ("Ms. Pauley") filed on July 3, 2024, Global Ex. 113; (3) JoAnn Elizabeth Russell ("Ms. Russell") filed on August 9, 2024, Global Ex. 114; (4) Shawn Corigan Lee ("Mr. Lee") also filed on August 9, 2024, Global Ex. 115; and (5) Jennifer Rebecca Poulston ("Ms. Poulston") filed on September 9, 2024, Global Ex. 116. RLG acknowledged that it had not received the required certificate of registration from the VSB when it filed each of these cases. MP Stip. ¶¶ 18, 21, 26, 30. The Court finds in each instant that the filing of these five cases violated the Sorgho Consent Order.

### 4.    The Five Consumer Bankruptcy Cases at Bar

### A.    The *Linderman* Case, Case No. 24-31714-KRH

On January 26, 2024, Trisha Linderman ("Ms. Linderman") and RLG, by and through Nicholas Wajda ("Wajda"),[11] entered into a Chapter 7 Retainer Agreement (the "Linderman Retainer Agreement"). Linderman Ex. 135. Under the terms of the Linderman Retainer Agreement, RLG, among other things, agreed to:

> 4. Review with the Client and sign the completed petition, statements, and schedules, as well as all amendments thereto, whether filed with the petition or later.
>
> 5. Timely prepare and file the Client's petition, statements, and schedules after receipt of all necessary documentation and payments from the Client.
>
> *****
>
> 3. Provide knowledgeable legal representation for the Client at the § 341(a) meeting of creditors and with regard to motion and/or any motion hearing during the case.
>
> *****

---

[11] Wajda is the managing partner of RLG. Global Ex. E at ¶ 4 & Ex. 2. He is not admitted to practice before this Court. Wajda is admitted to practice in California and Nevada. *Id.* The Court received no evidence regarding Wajda's admission status in the Commonwealth of Virginia and, therefore, it declines to consider the propriety of Wajda's execution of a retainer agreement regarding a legal engagement in Virginia.

6.  Timely respond to trustee inquiries, including those by the United States Trustee's office.

7.  Timely prepare, file, and serve any necessary amended statements and schedules and any change of address, in accordance with information provided by the Client.

8.  Be available to respond to the Client's questions throughout the term of the case.

9.  Prepare, file, and serve timely modifications or amendments to the petition, schedules or statements, when necessary.

*****

14. Provide any other legal services necessary for the administration of this case before the bankruptcy court.

Linderman Ex. 135.  In exchange for the services RLG agreed to provide, Ms. Linderman agreed to pay RLG $1,950.00, inclusive of the applicable filing fee, prior to the filing of her case.  *Id.*  Ms. Linderman paid the entire fee in the amount of $1,950.00 to RLG on January 26, 2024.  Linderman 329 Motion ¶ 15.[12]

On January 29, 2024, RLG sent a draft bankruptcy petition, draft schedules, and a draft statement of financial affairs to Ms. Linderman by email.  Linderman Ex. 136.  The email instructed Ms. Linderman to first manually sign, but not date, all provided signature pages.  Linderman Ex. 136.  Following execution of the signature pages, Ms. Linderman was then instructed to review the draft documents that RLG had provided and to indicate any necessary changes.  Linderman Ex. 136.

---

[12]  The "Linderman 329 Motion" refers to the *Motion to Examine Debtor's Transactions with Thomas Watson, Esquire, Recovery Law Group, APC, and Wajda Law Group, APC, for Return of Attorney's Fees, and Imposition of Sanctions* [*In re Recovery Law Grp.*, Misc. Pro. No. 24-301-KRH, ECF No. 22].

On May 2, 2024 (the "Linderman Petition Date"),[13] RLG filed a voluntary petition (the "Linderman Petition") under Chapter 7 of the Bankruptcy Code on behalf of Ms. Linderman. Linderman Ex. 123.  Part 7 of the Linderman Petition reflects an electronic signature by Ms. Linderman and an electronic signature by Watson as an attorney with "Recovery Law Group/Wajda Law," 309 W. 11th Street, Anderson, Indiana 46016.  *Id.*

With the Linderman Petition, Watson filed (i) a summary of assets, liabilities and certain statistical information, (ii) schedules A-J, along with a declaration (collectively, the "Linderman Schedules"), (iii) a statement of financial affairs (the "Linderman SOFA"), (iv) a statement of intention (the "Linderman SOI"), (v) a Chapter 7 statement of current monthly income (the "Linderman Form 122A-1"), and (vi) a disclosure of compensation (the "Linderman 2016 Disclosure").[14]  *Id.*  Watson signed the Linderman 2016 Disclosure, which stated in part that he agreed to provide the following services:  (a) analysis of Ms. Linderman's financial situation, and rendering advice to Ms. Linderman in determining whether to file a petition in bankruptcy; (b) preparation and filing of any petition, schedules, statement of affairs and plan which may be required; and (c) representation of Ms. Linderman at the meeting of creditors and any adjourned meetings thereof.  *Id.*

The documents filed by Mr. Watson and RLG disclose the following:

- As of the Linderman Petition Date, Ms. Linderman had been employed with NCR/Voyix for one year and her gross monthly income was $2,907.22.  *Id.*

- Ms Linderman had income of (i) $7,962.14 for the period of time between January 2024 and the Linderman Petition Date;

---

[13]   This petition date occurred prior to entry of the Sorgho Consent Order.

[14]   Bankruptcy Rule 1007(b) requires that these documents be filed in all Chapter 7 bankruptcy cases as prescribed on the Official Forms within the time limits set forth in Bankruptcy Rule 1007(c).

(ii) $37,510.51 for calendar year 2023; and (iii) $18,632.00 for calendar year 2022.  *Id.*

− Contrary to the income reported on the Linderman Schedules and the Linderman SOFA, the Linderman Form 122A-1 reflected that the Debtor had no earnings in the six months prior to filing Chapter 7.  *Id.*

− The Linderman SOFA disclosed that Ms. Linderman had paid $1,950 to RLG, *id.*, in accordance with the terms of the Linderman Retainer Agreement, Linderman Ex. 135.  However, the Linderman 2016 Disclosure stated that Ms. Linderman had paid only $1,850 to RLG.  Linderman Ex. 123.

On May 3, 2024, the Court docketed a *Notice of Debtors Prior Filings*, indicating that Ms. Linderman had previously filed a Chapter 13 case in the Western District of Oklahoma, Case No. 18-13735, on August 31, 2018, and that she received a discharge in that case on November 19, 2021 (the "Oklahoma Case").  *See* Docket, *In re Linderman*, Case No. 24-31714-KRH.  On May 5, 2024, the Clerk's Office issued a *Notice that Debtor is Ineligible for Discharge* (the "Ineligibility Notice"), noting that it appeared that Ms. Linderman was not eligible to receive a discharge pursuant to sections 727(a)(8), 727(a)(9), or 1328(f) of the Bankruptcy Code.  Linderman Ex. 127.  The Ineligibility Notice required any "[o]bjections contesting the record [to] be filed with the Clerk of the U.S. Bankruptcy Court within twenty-one (21) days from the date of this notice." i.e., no later than May 24, 2024.  *Id.*

While a Chapter 13 bankruptcy case was filed in Oklahoma using Ms. Linderman's social security number, a cursory review of the Oklahoma Case would reveal that the Oklahoma Case was filed by another individual – not Ms. Linderman.  This information was readily available and actually known by her counsel, *see* Linderman Ex. 101 at 5:1-15, but was not brought to the attention of the Court.  Watson and RLG owed a duty to Ms. Linderman to respond to the Ineligibility Notice.  They did not.  Having received no response or objection to the Ineligibility

Notice, the Court entered an *Order* (the "Ineligibility Order") on May 29, 2024, finding Ms. Linderman to be ineligible for a discharge and ordering the Clerk to not enter a discharge in Ms. Linderman's bankruptcy case.  Linderman Ex. 128.

On June 11, 2024, the Chapter 7 Trustee assigned to Ms. Linderman's bankruptcy case, Jennifer West ("Ms. West"), convened the meeting of creditors required pursuant to 11 U.S.C. § 341 utilizing a Zoom platform.  (the "First Linderman Meeting of Creditors").  Linderman Ex. 101.  Ms. Linderman and Watson appeared at the First Linderman Meeting of Creditors. Linderman Ex. 101 at 3:1-14.  Ms. Linderman testified that she had only had one phone conversation with Watson prior to the First Linderman Meeting of Creditors.  *Id.* 11:13-16. Ms. Linderman testified that during that single phone conversation she and Watson did not discuss the bankruptcy documents that RLG had drafted and filed for her.  *Id.* 11:10-20.  Ms. Linderman testified that, after executing the signature pages as instructed, she had reviewed the bankruptcy documents that RLG had drafted for her all by herself.  *Id.* 11:1-9.  Ms. Linderman stated that she was confused by the draft bankruptcy documents.  *Id.* 11:1-5; 12:22-13:7.  She expressed concern to the Chapter 7 Trustee that she may have missed something.  *Id.* 12:8-25.

During the First Linderman Meeting of Creditors, the U.S. Trustee informed Watson twice that he would need to address the Ineligibility Order so that Ms. Linderman could receive her discharge.  *Id.* 8:2-12; 14:7-9.  Because the initial meeting of creditors was conducted within fourteen days of entry of the Ineligibility Order, Watson could have timely moved for reconsideration under the more relaxed standard of Bankruptcy Rule 9023.  He failed to do so.

The U.S. Trustee also informed Watson that he would need to amend the Linderman Form 122A-1 to accurately reflect Ms. Linderman's income.[15] *Id.* 9:1-14.  The Chapter 7 Trustee advised Watson that the Linderman SOI was blank and would need to be amended. *Id.* 14:23-25. The Chapter 7 Trustee also advised Watson that she still required certain documentation to conclude her review of Ms. Linderman's case.[16] *Id.* 15:2-5.

Although Watson did file an amended Form 122A-1 on behalf of Ms. Linderman, Linderman Ex. 124, Watson failed to provide the requested documentation to the Chapter 7 Trustee.  He also failed to file an amended statement of intention.  The Chapter 7 Trustee contacted Watson about these deficiencies on May 7, June 11, July 10, August 7, August 21, August 27, September 14, September 18, October 7, October 15, October 17, and October 23, 2024. Linderman 329 Motion ¶ 29.  The U.S. Trustee also sent follow-up email reminders to Watson about the need to correct the deficiencies on June 17, July 5, July 22, August 5, August 8, September 19, October 7, October 22, and November 1, 2024.  Linderman Exs. 113-121.  Because Watson and RLG failed to timely address the outstanding issues, Ms. Linderman's meeting of creditors had to be adjourned a total of nine times.  Linderman Ex. 134 6:7-8.

---

[15]        MS. PECORARO:  [O]ne of your forms was filled out and it looks like it may not be complete. . . . Mr. Watson, if you're able to amend that means test and correct it.

MR. WATSON:  I will do that.  I apologize.  I've had some issues with our software.  I could leave it at that.

Linderman Ex. 101 9:1-14.

[16]    The documents that were requested from Ms. Linderman were documents that are routinely required to be produced in every Chapter 7 bankruptcy case under the provisions of section 521 of the Bankruptcy Code and Bankruptcy Rule 4002.  Watson should have collected the documentation prior to the Linderman Petition Date and should have provided the documentation to the Chapter 7 Trustee for review prior to the First Linderman Meeting of Creditors.

On August 13, 2024, the Chapter 7 Trustee convened one of the adjourned § 341 meetings (the "August 13 Adjourned Meeting") at which Ms. Linderman and Watson appeared. Linderman Ex. 102 2:2-3. Ms. Linderman testified that she had provided all of the requested documents to Watson. *Id.* 4:8-23. Watson stated that he thought he had provided all of the documents to the Chapter 7 Trustee or had tried to load them into the system. *Id.* 2:7-12. Ms. Linderman further testified that she could not get a response from Watson or RLG about the status of the Ineligibility Order.[17]

After the conclusion of the August 13 Adjourned Meeting, Watson emailed the U.S. Trustee on August 16, 2024, requesting help in contacting the Office of the U.S. Trustee in Oklahoma about the Oklahoma Case. Linderman Ex. 103. On August 19, 2024, the U.S. Trustee responded to Watson, "[a]s I told you at the [First Linderman Meeting of Creditors], our office has reached out to the Oklahoma office. You need to do something in this Court as indicated on the notice docketed in the case." *Id.*

---

[17]   The transcript from the August 13 Adjourned Meeting provides the following exchange:

> MS. LINDERMAN:  Can I just say something?
>
> MS. WEST:  Yes, go ahead.
>
> MS. LINDERMAN:  Every time we ask about the social it's a follow-up, it's a follow-up. What is going on? Because to my knowledge I was supposed to be discharged August 12th.
>
> MS. WEST: Okay. So, you haven't gotten any answers from your counsel either?
>
> MS. LINDERMAN:  No.
>
> MS. WEST:  Okay.
>
> MS. LINDERMAN:  And it's kind of hard for me.

*Id.* 2:13-22.

On August 27, 2024, the Chapter 7 Trustee convened another adjourned meeting (the "August 27 Adjourned Meeting"). Linderman Ex. 104. Although the Chapter 7 Trustee had excused Ms. Linderman from attending the August 27 Adjourned Meeting, Linderman Ex. 103 3:4-6, Watson had not been excused and was still required to appear. Despite receiving an email reminder from the U.S. Trustee, Watson failed to attend the August 27 Adjourned Meeting. Linderman Exs. 104, 105.

On August 30, 2024, Watson and RLG finally filed a *Motion to Vacate Its Order Declaring the Debtor Ineligible for a Discharge Pursuant to 11 U.S.C. § 727(a)(8), (9), or § 1328(f)* on behalf of Ms. Linderman, (the "Motion to Vacate"). Linderman Ex. 129. The Motion to Vacate did not contain any legal authority for the relief sought. Watson failed to set the Motion to Vacate for hearing as required by Local Bankruptcy Rule 9013-1(H)(2)(c). The Motion to Vacate was simply left to languish.

Although Watson failed to properly notice the Motion to Vacate and took no steps otherwise to pursue the matter, the U.S. Trustee did file a response to the Motion to Vacate on September 20, 2024. Linderman Ex. 130. In addition to simply serving a copy of the response upon Watson, the U.S. Trustee also served a copy on Mulcahy on behalf of RLG. *Id.* The response indicated that the U.S. Trustee supported the relief sought in the Motion to Vacate "as long as proper evidence and legal support are presented." *Id.* ¶ 45. The response also noted that the U.S. Trustee felt it necessary to file the pleading even though the Motion to Vacate had not been set for hearing in order to alert the Court of its "concerns with the representation of the Debtor in this case" and "to inform the Court of the history of this case and the efforts of the United States Trustee and Chapter 7 Trustee." *Id.* ¶ 46. Despite being alerted again of the need to set the Motion to Vacate for hearing, RLG took no such action.

On September 24, 2024, the Chapter 7 Trustee convened yet another adjourned meeting of creditors (the "September 24 Adjourned Meeting"). Watson did appear at the September 24 Adjourned Meeting. Linderman Ex. 106. Watson had finally uploaded the day prior some, but not all, of the documents Ms. Linderman had given to him. The Chapter 7 Trustee advised Watson at the September 24 Adjourned Meeting that she was still missing certain items and that the Linderman SOI had still not been amended. *Id.* 2:11-17, 3:10-23. Watson explained that he was busy and cited computer problems as the cause for the delay:

> I've been very busy, but my computer blew up and I now have a new laptop, which is working much better. But, it's trying to get the stuff in. I've had a problem uploading. I was having a problem filing some amended schedules. I can't remember if that's this case or not.

*Id.* 2:20-24. The U.S. Trustee also attended the September 24 Adjourned Meeting and asked if Watson had reviewed the response that the U.S. Trustee had filed to the Motion to Vacate – he had not – and again advised Watson that he needed to set the Motion to Vacate for hearing. *Id.* 4:3-5:12. Despite this instruction, RLG took no further action with respect to the Motion to Vacate.

The day after the September 24 Adjourned Meeting, Watson filed what was purported to be an amended SOI on behalf of Ms. Linderman, as he had been requested to do by the Chapter 7 Trustee over three months prior. *See In re Linderman*, Case No. 24-31714-KRH, ECF No. 28, Linderman Ex. 125. But, Watson filed the wrong document. The document that Watson labeled and docketed as an amended SOI was actually Ms. Linderman's Form 122A-1. *In re Linderman*, Case No. 24-31714-KRH, ECF No. 28, Linderman Ex. 125. The U.S. Trustee immediately alerted Watson of his mistake via email. Linderman Ex. 107. Watson did not take timely corrective action.

With the outstanding deficiencies continuing in the Linderman case, the Chapter 7 Trustee was required to conduct yet another adjourned meeting of creditors on October 8, 2024 (the "October 8 Adjourned Meeting").  Linderman Ex. 108.  Although the Chapter 7 Trustee sent Watson an email reminder and although he had attended a meeting of creditors earlier that day for another client, Watson was not present for the October 8 Adjourned Meeting when the Ms. Linderman's case was called.  *Id.* 2:1-21.  Watson eventually appeared later in the day on the Zoom platform utilized by the Chapter 7 Trustee.  *See id.* 2:23.  The Chapter 7 Trustee extended Watson the courtesy of recalling the October 8 Adjourned Meeting outside of its scheduled time slot.

Watson was completely unprepared for the October 8 Adjourned Meeting.  When asked about the status of the Ineligibility Order, *id.* 3:12-13, Watson responded that he needed to "file a motion to get that resolved," *id.* 3:14-15.  The U.S. Trustee reminded Watson that he had already filed the Motion to Vacate.  The U.S. Trustee told Watson that what he needed to do was schedule it for a hearing.  Linderman Ex. 108 3:16-24.  The Chapter 7 Trustee was required once again to adjourn the meeting in order to provide Watson with more time to fix the outstanding issues in Ms. Linderman's case. The Chapter 7 Trustee admonished Watson that Ms. Linderman would need to appear at the next adjourned § 341 meeting if the outstanding issues were not addressed prior to that date.  *Id.* 3:22-4:25.  They were not.

On October 22, 2024, the Chapter 7 Trustee convened yet another meeting of creditors (the "October 22 Adjourned Meeting").  Prior to conducting the meeting, the Chapter 7 Trustee sent Watson an email reminder that he and Ms. Linderman both needed to attend the October 22 Adjourned Meeting.  Linderman 329 Motion ¶ 72.  Watson was present at the adjourned meeting, but Ms. Linderman was not.  Linderman Ex. 109 5:1-7.  Watson advised that he had emailed and left voicemail messages for Ms. Linderman, but she was not responding to him.  *Id.* 5:6-15.  The

U.S. Trustee again asked Watson why he had not filed an amended statement of intention.  *Id.*

5:16-18.  Watson claimed he was "swamped" and "on vacation" and had "a lot of different things

going on."  *Id.* 5:16-25.  The U.S. Trustee asked Watson why he had not yet set the Motion to

Vacate for hearing, to which question Watson again claimed to have been "swamped" and

promised to have it done within 24 hours.  *Id.* 6:8-22; 7:9-13.

Given the missing documentation and Watson's continued failure to notice the Motion to

Vacate for hearing, the Chapter 7 Trustee was forced to further adjourn the October 22 Adjourned

Meeting.  *Id.* 6:23-25.  The Chapter 7 Trustee obtained permission from Watson to communicate

the date of the adjourned § 341 meeting directly to Ms. Linderman by email.  *Id.* 7:14-25.  Ms.

Linderman responded to the Chapter 7 Trustee's email communication, explaining that she had

not been able to reach Watson in weeks.[18]

On November 19, 2024, the Chapter 7 Trustee convened another adjourned meeting of

creditors in Ms. Linderman's case via Zoom (the "November 19 Adjourned Meeting").  Linderman

Ex. 111.  The November 19 Adjourned Meeting was scheduled to begin at noon.  *Id.*  Ms.

Linderman was present on the Zoom platform at noon, however, due to a busy 341 meeting docket,

the Chapter 7 Trustee did not call Ms. Linderman's case until approximately 1:30 p.m.  Linderman

329 Motion ¶¶ 82-83.  Watson was not present in spite of having received an email reminder.[19]

Linderman Ex. 111 2:8-10.  When the Chapter 7 Trustee delayed calling the case because of

Watson's absence, Ms Linderman expressed her exasperation with Watson:

---

[18]   Ms. Linderman stated that she had "been calling Watson for weeks now and he [was] not returning my calls" and
that she "even called the law firm [RLG] and they have tried getting ahold of him on my behalf and still no
response."  *Id.*

[19]   Earlier in the day, Watson also failed to appear at a scheduled meeting of creditors conducted in Ms. Poulston's
bankruptcy case, Case Number 24-33369-KRH, until prompted by an email and phone call from the U.S. Trustee.
*See infra* section 4.E.

> No, that's my thing. I have left this man well over a dozen
> voicemails to call me back, and he's not calling me back. So, I
> cannot get a hold of him whatsoever. I've called the law firm. The
> law firm has reached out to him. He's not responding to [them]
> either. And I think you e-mailed me my –- my meeting date. I've
> even let you know on that e-mail I cannot get a hold of him
> whatsoever.

Ex. 2:11-21. The U.S. Trustee contacted Watson by email and phone to advise that his presence

was necessary. *Id.* 3:12-13; Linderman Ex. 112. About ten minutes later, right as the Chapter 7

Trustee and the U.S. Trustee had decided to adjourn the meeting due to Watson's failure to appear,

he finally joined the Zoom platform for the November 19 Adjourned Meeting. Linderman Ex. 111

3:11-25. Watson explained that he "got confused that there were two 341 hearings today" and

admitted he only logged in because of the email prompt from the U.S. Trustee. *Id.* 7:5-14.

The delay caused by Watson's absence extended the time Ms. Linderman had to take off

from work. Ms. Linderman explained that she was out of leave and had used her one-hour lunch

break to attend the meeting. *Id.* 7:17-8:1. Ms. Linderman also testified that she will lose her job

if she misses any more time from work and that she needs the job because, among other things,

she is the single parent of a one-year-old child. *Id.* 8:1-3.

Ms. Linderman testified about her numerous efforts over the past several months to reach

Watson. *Id.* 8:7:13. Despite all of her phone calls and emails, Watson never once returned her

call or responded to one of her emails. *Id.* 10:13-19. When she called RLG for help,

Ms. Linderman testified that a person from RLG dismissed her, saying that "attorneys are busy."

*Id.* 9:12-21.

In light of her testimony, the U.S. Trustee read to Ms. Linderman excerpts from the last

meeting of creditors, which included Watson's statements that Ms. Linderman was not responding

to him. Ms. Linderman testified without hesitation that Watson was lying:

MS. PECORARO:  Mr. Watson said, I contacted her last week and I sent her a reminder on Friday, and I sent her a reminder yesterday. And he said, yes, I'm e-mailing her and leaving her voicemails.  And I said, you're not hearing back from her?  And he said, I'm not hearing back from her.  Would this be true statements that he was reaching out to you and you weren't responding to him?

MS. LINDERMAN:  That's a lie.  I have not gotten any e-mails, any calls, nothing.

*****

MS. PECORARO:  Okay.  So, just to confirm.  When Mr. Watson says he was calling you and e-mailing you the week prior to the October 22nd 341 meeting and you weren't responding to him, you're saying that it's an incorrect statement?

MS. LINDERMAN:  That's incorrect.  I don't have any e-mails. And I check my e-mail daily.

*Id.* 17:7-18:8.  Watson declined to respond to the foregoing exchange.

When asked why an amended statement of intention and a notice of hearing on the Motion to Vacate had not been filed, Watson again blamed computer and password problems.  *Id.* 10:24-13:11.  Despite having used this excuse for months, Watson said that his computer issues were now resolved.  *Id.* 11:21-25.  The U.S. Trustee directed Watson to file the missing documents by the end of the day; Watson agreed.  *Id.* 12:16-13:1.  That afternoon, over five months after the initial meeting of creditors when the request had first been made, Watson filed an amended statement of intention.  *In re Linderman*, Case No. 24-31714-KRH, ECF No. 31, Linderman Ex. 126.  However, Watson failed to file a notice of hearing on the Motion to Vacate.  Accordingly, on November 26, 2024, the U.S. Trustee filed the Linderman 329 Motion.

On December 16, 2024, Mr. Sandler noted his appearance on behalf of Ms. Linderman. Less than a week later, on December 21, 2024, Mr. Sandler filed a notice of hearing regarding the Motion to Vacate and later filed a memorandum of law in support of the Motion to Vacate.  *In re*

*Linderman*, Case No. 24-31714-KRH, ECF Nos. 40, 45.  After a hearing on January 21, 2025, the

Court entered an order vacating the Ineligibility Order.   *In re Linderman*, Case No.

24-31714-KRH, ECF No. 50.  On February 5, 2025, Ms. Linderman finally received her Chapter

7 discharge. *In re Linderman*, Case No. 24-31714-KRH, ECF Nos. 51, 53.  Had a timely response

been filed to the Ineligibility Notice, the Ineligibility Order would never have been entered.  If her

case been properly handled by RLG, Ms. Linderman would have received her discharge five

months earlier than she did.  As it turned out, it took over a year from the date of execution of the

Linderman Retainer Agreement and the subsequent intervention of Mr. Sandler before Ms.

Linderman was able to receive her bankruptcy discharge.

The Court finds that RLG breached the Linderman Retainer Agreement.  RLG did not

review the completed petition, statements, and schedules with Ms. Linderman.  RLG did not

provide knowledgeable legal representation for Ms. Linderman at the § 341(a) meeting of

creditors.  RLG and Watson did not timely respond to inquiries from the Chapter 7 Trustee and

the U.S. Trustee.  RLG and Watson did not timely prepare and file the necessary amended

statements and schedules.  RLG and Watson were not available to respond to the Ms. Linderman's

questions throughout the term of her case.  RLG failed to provide the legal services necessary for

the administration of Ms. Linderman's bankruptcy case.  Ms. Linderman suffered damages as a

consequence of RLG's breach of the Linderman Retainer Agreement.

## B.    The *Pauley* Case, Case No. 24-32478-KRH

On August 31, 2022, Ms. Pauley and RLG, by and through Wajda,[20] entered into a Chapter

7 Retainer Agreement (the "Pauley Retainer Agreement").  Global Ex. E at ¶ 3 & Ex. 1.  Under

the terms of the Pauley Retainer Agreement, RLG agreed, among other things, to do the following:

---

[20]    *See supra* note 11.

4. Review with the Client and sign the completed petition, statements, and schedules, as well as all amendments thereto, whether filed with the petition or later.

5. Timely prepare and file the Client's petition, statements, and schedules after receipt of all necessary documentation and payments from the Client.

*****

3. Provide knowledgeable legal representation for the Client at the § 341(a) meeting of creditors and with regard to motion and/or any motion hearing during the case.

*****

6. Timely respond to trustee inquiries, including those by the United States Trustee's office.

7. Timely prepare, file, and serve any necessary amended statements and schedules and any change of address, in accordance with information provided by the Client.

8. Be available to respond to the Client's questions throughout the term of the case.

9. Prepare, file, and serve timely modifications or amendments to the petition, schedules or statements, when necessary.

*****

14. Provide any other legal services necessary for the administration of this case before the bankruptcy court.

*Id.* at ¶ 3 & Ex. 1. In exchange for the services RLG agreed to provide, Ms. Pauley agreed to pay RLG $1,850.00, inclusive of the applicable filing fee, prior to the filing of her case. *Id.* ¶ 6. Ms. Pauley paid the entire fee in the amount of $1,850.00 to RLG on February 22, 2023. *Id.* ¶ 7.

On July 3, 2024 (the "Pauley Petition Date"), RLG filed a voluntary petition (the "Pauley Petition") for relief under Chapter 7 of the Bankruptcy Code on behalf of Ms. Pauley. *Id.* ¶ 1; Pauley Ex. 113. Part 7 of the Pauley Petition reflects an electronic signature by Ms. Pauley and

an electronic signature by Watson as an attorney with "Recovery Law Group/Wajda Law," 309

W. 11th Street, Anderson, Indiana 46016.  Global Ex. E ¶ 2; Pauley Ex. 113.

With the Pauley Petition, Watson filed (i) a summary of assets, liabilities and certain

statistical information, (ii) schedules A-J, including a declaration (collectively, the "Pauley

Schedule(s)"), (iii) a statement of financial affairs (the "Pauley SOFA"), (iv) a statement of

intention (the "Pauley SOI"), (v) a Chapter 7 statement of current monthly income (the "Original

Pauley Form 122A-1"), and (vi) a disclosure of compensation (the "Pauley 2016 Disclosure").

Global Ex. E ¶ 8.  Watson signed the Pauley 2016 Disclosure, which stated in part that he agreed

to provide the following services:  (a) analysis of Ms. Pauley's financial situation, and rendering

advice to Ms. Pauley in determining whether to file a petition in bankruptcy; (b) preparation and

filing of any petition, schedules, statement of affairs and plan which may be required; and

(c) representation of Ms. Pauley at the meeting of creditors and any adjourned meetings thereof.

*Id.* at Ex. 3 at 38.

Pauley Schedule E/F lists eight creditors holding unsecured claims against Ms. Pauley as

of the Petition Date.  *Id.* at ¶ 9 & Ex. 3 at 18-21.  Pauley Schedule I reflected that Ms. Pauley had

been employed with VCU Health Systems for sixteen years preceding the Pauley Petition Date,

and that her gross monthly income as of the Pauley Petition Date was $2,901.43.  *Id.* at ¶ 10 & Ex.

3 at 24-25.  Ms. Pauley's SOFA disclosed the following:

- Ms. Pauley had income between (i) January 1 and December 31,
  2023; (ii) January 1 and December 31, 2022; and (iii) January 1
  and December 31, 2021, but the amount of that income was not
  disclosed.

- Within the one-year period prior to the Pauley Petition Date, the
  Virginia Credit Union had issued a warrant in debt against
  Ms. Pauley and the matter had been "continued as of
  03/08/2023."

&#8211;   Within the one-year period prior to the Pauley Petition Date, Ms. Pauley had experienced (i) a repossession of a 2018 Nissan Altima in June 2022, and (ii) another repossession of undisclosed property on an "unknown" date.  Ms. Pauley did not disclose any garnishments or levies.

&#8211;   Within the one-year period prior to the Pauley Petition Date, Ms. Pauley closed a checking account at Virginia Credit Union on April 29, 2023.

*Id.* at ¶¶ 11-13, 15 & Ex. 3 at 29-30, 31, 33.  The Pauley SOI indicated that Ms. Pauley intended to assume an unexpired personal property lease with Mortan G. Thalhimer, Inc.  *Id.* at ¶ 16 & Ex. 3 at 36-37.  The Original Pauley Form 122A-1 stated that Ms. Pauley's household size was three persons as of her bankruptcy filing and that she had no earnings in the six months prior to filing.  *Id.* at ¶ 17 & Ex. 3 at 39-41.

On July 30, 2024, the Chapter 7 Trustee assigned to her case, William Broscious, convened the meeting of creditors required by section 341 of the Bankruptcy Code (the "First Pauley Meeting of Creditors").  *Id.* ¶ 18.  At the First Pauley Meeting of Creditors, Ms. Pauley testified that she had been continuously employed for eighteen years, *id.* at ¶ 19 & Ex. 4 at 5:12-14, not sixteen years as disclosed in the Pauley Schedules.  Ms. Pauley testified that her household consisted of two persons, not three people as disclosed on the Original Pauley Form 122A-1 – as her daughter had stopped living with her "almost about a year ago."  *Id.* at ¶ 19 & Ex. 4 at 6:7-21.

Ms. Pauley expressed frustration over RLG's lack of communication with her regarding her case.  She testified that she reviewed her bankruptcy petition and accompanying documents with an RLG attorney either "at the end of the year [2023]" or "earlier in 2024."  *Id.* at ¶ 26 & Ex. 4 at 13:10-16.  Despite having executed the Pauley Retainer Agreement in August of 2022 and having paid the entire fee for the engagement in February of 2023, RLG had delayed filing her case until July of 2024.  *Id.* at ¶ 23 & Ex. 4 at 11:4-9 ("Q.  Okay.  Do you know why your

bankruptcy case wasn't filed until July of this year?  A.  No, ma'am.  I've kept calling and I've been dealing with them. . . . I don't know. I've been doing my part.").  Because of the delay, Ms. Pauley testified that she had to take the pre-petition credit counseling course at least twice.[21] *Id.* at ¶ 25 & Ex. 4 at 12:10-19. 32.  Upon questioning from the U.S. Trustee regarding the delay, Watson answered only that "another attorney" had been assigned Ms. Pauley's case, but that the attorney "was no longer with" RLG.  *Id.* at ¶ 25 & Ex. 4 at 11:17-12:4.

During the First Pauley Meeting of Creditors, the Chapter 7 Trustee advised Ms. Pauley and Watson that he had received garnishment checks that had not been disclosed in the Pauley Schedules.  *Id.* at ¶ 20 & Ex. 4 at 5:17-6:6. 27.  The Chapter 7 Trustee requested Watson to amend Pauley Schedules B and C to address those checks.  *Id.*  The Chapter 7 Trustee also requested Watson provide a self-addressed stamped envelope for the Chapter 7 Trustee to use to return the garnishment checks if the checks were properly claimed exempt on the anticipated, amended Schedule C.  *Id.*

To permit Watson time to file the foregoing amendments and to provide the self-addressed stamped envelope, the Chapter 7 Trustee adjourned the First Pauley Meeting of Creditors to August 26, 2024.  *In re Pauley*, Case No. 24-32478-KRH, ECF No. 11.  On July 30, 2024, the U.S. Trustee separately requested that Watson and RLG provide various additional documents related to Ms. Pauley's case.  Global Ex. E at ¶ 29 & Ex. 6.  On August 3, 2024, RLG provided a partial response to the U.S. Trustee's request for documentation.  *Id.* ¶ 30.  Included in those documents were undated signature pages executed by Ms. Pauley for her schedules and

---

[21]   An individual may not be a debtor under the Bankruptcy Code unless the individual has taken a credit counseling course from an approved agency within the 180 days immediately preceding the filing of the bankruptcy petition. 11 U.S.C. § 109(h).

statements.[22]  *Id.* at ¶¶ 32-35 & Ex. 8.  The undated, fully executed signature pages that RLG provided to the U.S. Trustee do not match the versions bearing Ms. Pauley's electronic signature that were filed with the Court.

- The Pauley SOFA electronically filed with the Court bears Ms. Pauley's declaration under penalty of perjury halfway down the seventh page. *Id.* at Ex. 1.  The undated statement of financial affairs bearing Ms. Pauley's wet signature page has the signature block at the end of the fifth page. *Id.* at Ex. 8.

- The Pauley SOI electronically filed with the Court bears Ms. Pauley's declaration under penalty of perjury below one unexpired lease. *Id.* at Ex. 1.  The undated statement of intention provided by RLG bears Ms. Pauley's wet signature below two unexpired leases: one with a "Cell Phone Company," and the other with a "Landlord Name." *Id.* at Ex. 8.

- The Pauley Form 122A-1 electronically filed with the Court bears Ms. Pauley's declaration under penalty of perjury at the top of the third page. *Id.* at Ex. 1.  The signature block on the undated signed statement of current monthly nears Ms. Pauley's wet signature at the bottom of the second page. *Id.* at Ex. 8.

Although RLG and Watson provided the perplexing signature pages, they failed to provide a complete response to the U.S. Trustee's request for supplemental documentation.  On August 8, 2024, the U.S. Trustee reiterated to Watson the need for the outstanding information, including Ms. Pauley's tax returns, receipts for payments made by Ms. Pauley to RLG, pay stubs, and Ms. Pauley's bank statements for 2023.[23] *Id.* at ¶ 40 & Ex. 9.   RLG and Watson again failed to provide the missing information.  On August 21, 2024, the U.S. Trustee once again reminded

---

[22]  "All pleadings, documents and papers filed with the Court must be filed through the Case Management/Electronic Case Files System (CM/ECF), except as otherwise provided for in the Court's Electronic Case Files Policy (CM/ECF Policy)."  LBR 5005-2(A).  Petitions and other documents containing an oath or under penalty of perjury require original signatures.  LBR 5005-1(F).  For these documents, the attorney must retain the **original** executed documents bearing the client's wet signature until three years after the case is closed.  CM/ECF Policy 7(A).

[23]  These were documents that Chapter 7 debtors are routinely required to provide to Chapter 7 trustees and the U.S. Trustee.  *See supra* note 16.

Watson about the outstanding information and amendments needed in advance of the adjourned § 341 meeting scheduled for August 26, 2024. *Id.* at ¶ 41 & Ex. 10.

Based on Ms. Pauley's testimony at the First Pauley Meeting of Creditors, the scant documentation provided by RLG, and other apparent discrepancies in the documents filed for Ms. Pauley in her bankruptcy case, the U.S. Trustee requested that Watson and/or RLG file amended versions of the documents. *Id.* at ¶ 36 & Ex. 6. Accordingly, on August 6, 2024, Watson filed an amended Form 122A-1 (the "Amended Pauley Form 122A-1"). *See In re Pauley*, Case No. 24-32478-KRH, ECF No. 12. However, the Amended Pauley Form 122A-1 was inaccurate. The disclosed amount of Ms. Pauley's average monthly income for the six months preceding the Pauley Petition Date was inconsistent with the documentation Watson had provided to the U.S. Trustee. Global Ex. E ¶ 38.

Watson and RLG did not file any other amendments in Ms. Pauley's case. Without the necessary amendments, Watson and RLG failed to disclose (1) garnished wages in the amount of $1,325.71; (2) at least three omitted creditors; (3) correct information regarding the duration of Ms. Pauley's employment and the amount of her wages; (4) all of Ms. Pauley's prior addresses during the three years preceding her bankruptcy filing; (5) all income received by Ms. Pauley during the 2024 calendar year through the Pauley Petition Date; and (6) a full and complete disclosure of all lawsuits, court actions, or administrative proceedings against Ms. Pauley and all repossessions, foreclosures, garnishments, attachments, seizures, and levies upon Ms Pauley's property during the one year prior to bankruptcy. *Id.* ¶ 46.

Based on the failure of RLG and Watson's to file the necessary amendments in Ms. Pauley's bankruptcy case and to produce to the U.S. Trustee the remaining requested documentation, on August 21, 2024, the U.S. Trustee filed a *Motion to Examine Debtor's*

*Transactions with Thomas Watson, Esquire, Recovery Law Group, APC, and Wajda Law Group, APC, for Return of Attorney's Fees, and Imposition of Sanctions*. *In re Pauley*, Case No. 24-32478-KRH, ECF No. 13 (the "Pauley 329 Motion").

Prior to the hearing on the Pauley 329 Motion, RLG and the U.S. Trustee filed on October 7, 2024, a joint stipulation (the "Pauley Stipulation"). Global Ex. E. The Pauley Stipulation was signed by Mulcahy on behalf of RLG. *Id.* RLG conceded the facts contained in section E of the Pauley Stipulation,[24] and admitted RLG's failings violated both the terms of the Pauley Retainer Agreement and this Court's Local Bankruptcy Rules. *Id.* at "Ordered" ¶ 1. In resolution of the Pauley 329 Motion, RLG agreed to refund the fees paid by Ms. Pauley in the full amount of $1,850. *Id.* at "Ordered" ¶ 2. RLG also agreed to pay to Ms. Pauley an additional $1,487.92, i.e., which represented the amount of funds that were garnished from Ms. Pauley's wages that would not have been garnished if RLG had not delayed filing Ms. Pauley's bankruptcy case for fifteen months after she paid RLG to file it. *Id.* at "Ordered" ¶ 4.

Additionally, RLG agreed to "hire an experienced bankruptcy attorney licensed in Virginia and admitted to practice before" this Court prior to filing any additional bankruptcy cases in this Court. *Id.* at "Ordered" ¶ 6. Until then, RLG agreed that Mulcahy would personally review all open bankruptcy cases pending before the Court "and take remedial action in each case as is necessary and as does not constitute the unlawful practice of law (such remedial action includes referring the case to a Virginia lawyer admitted to the Bankruptcy Court and paying that lawyer's full fee)." *Id.* at "Ordered" ¶ 8.[25]

---

[24] The Pauley Stipulation and its corresponding exhibits were admitted into evidence without objection at the Trial in this Miscellaneous Proceeding as Global Exhibit E.

[25] On October 16, 2024, the Court entered its order approving the Pauley Stipulation (the "Order Approving Pauley Stipulation").

On October 9, 2024, the Court conducted a hearing on the Pauley 329 Motion.  The U.S. Trustee and Watson appeared at the October 9, 2024, hearing.  During the course of the October 9, 2024, hearing, the U.S. Trustee identified to the Court the need to amend various documents filed in Ms. Pauley's bankruptcy case.  Watson acknowledged that amendments were appropriate and agreed to file amended schedules no later than October 10, 2024.  The Court directed Watson to do so and continued the hearing to October 23, 2024, to ensure compliance.

On October 23, 2024, the Court conducted the continued hearing on the Pauley 329 Motion.  Global Ex. F at 2.  The U.S. Trustee and Ms. Pauley appeared at the October 23 hearing; Watson failed to appear.  *Id*.  At the hearing, the U.S. Trustee represented that Ms. Pauley had appeared at an adjourned meeting of creditors conducted on October 21, 2024, but that Watson had not. Ms. Pauley further informed the Court that she had been unable to reach Watson in quite some time.  *Id*.  Based on Watson's failure to comply with the Court's directive at the October 9, 2024, hearing, and Watson's failure to comply with the Order Approving Pauley Stipulation, Court entered an Order (the "Contempt Order") holding Watson in contempt of Court and fining him $1,000 payable to Ms. Pauley within fourteen days.[26]  *Id*.  The Contempt Order further provided that U.S. Trustee could file a statement of default if Watson failed to certify that he had timely paid the sanctions award, in which case the Court warned it would consider assessing additional sanctions and conducting disciplinary proceedings.  *Id*.

On November 18, 2024, the U.S. Trustee filed a *Statement of Default* in accordance with the Contempt Order.  Global Ex. G.  The U.S. Trustee represented that the Chapter 7 Trustee had conducted an adjourned meeting of creditors in Ms. Pauley's case on November 18, 2024 – one

---

[26]   The Court found that such a sanction was appropriate to both compensate Ms. Pauley for having to attend yet another court hearing and another meeting of creditors and to deter future conduct from Watson.  The Contempt Order is a final, unappealable order.

week after the deadline for Watson to pay the $1,000 sanctions award to Ms. Pauley.  *Id.*  Watson

failed to appear at the adjourned meeting of creditors.  Ms. Pauley testified that she had not been

paid.  *Id.*  Based on the Statement of Default, this Court entered an *Order for Thomas Watson to*

*Show Cause Why He Should Not Be Disciplined for Violating Order Holding Him in Contempt of*

*Court and Imposing Sanctions* (the "Show Cause Order"), whereby the Court ordered Watson to

appear at a hearing and show cause why he should not be removed as a member of the bar of this

Court.  Global Ex. H.  The Court warned Watson that the imposition of any discipline by this Court

may result in reciprocal discipline and urged Watson to hire counsel.  *Id.*  The Court held a final

evidentiary hearing on the Show Cause Order on January 21, 2025.

### C.    The *Russell* Case, Case No. 24-32957-KLP

On February 12, 2024, Ms. Russell and RLG, by and through Wajda[27], entered into a

Chapter 7 Retainer Agreement (the "Russell Retainer Agreement").  Russell Ex. 101.  Under the

terms of the Russell 7 Retainer Agreement, RLG agreed, among other things, to do the following:

> 4.  Review with the Client and sign the completed petition,
>     statements, and schedules, as well as all amendments thereto,
>     whether filed with the petition or later.
>
> 5.  Timely prepare and file the Client's petition, statements, and
>     schedules after receipt of all necessary documentation and
>     payments from the Client.
>
> *****
>
> 3.  Provide knowledgeable legal representation for the Client at the
>     § 341(a) meeting of creditors and with regard to motion and/or
>     any motion hearing during the case.
>
> 4.  If the Attorney finds it necessary for another attorney to appear
>     and attend the § 341(a) meeting or any court hearing, personally
>     explains to the Client, in advance, the role and identity of the

---

[27]  *See supra* note 11.

other attorney and provide the other attorney with the "file" in
sufficient time to review it and properly represent the Client.

*****

7. Timely prepare, file, and serve any necessary amended
statements and schedules and any change of address, in
accordance with information provided by the Client.

8. Be available to respond to the Client's questions throughout the
term of the case.

9. Prepare, file, and serve timely modifications or amendments to
the petition, schedules or statements, when necessary.

*****

14. Provide any other legal services necessary for the administration
of this case before the bankruptcy court.

*Id*. In exchange for the services RLG agreed to provide, Ms. Russell agreed to pay RLG $1,950.00,

inclusive of the applicable filing fee, prior to the filing of her case. *Id*. Ms. Russell paid the entire

fee in the amount of $1,950.00 to RLG on June 20, 2024. Russell Ex. 103.

On August 9, 2024 (the "Russell Petition Date"), RLG filed a voluntary petition for relief

under Chapter 7 of the Bankruptcy Code on behalf of Ms. Russell (the "Russell Petition"). *Id*.

Part 7 of the Russell Petition reflects an electronic signature by Ms. Russell and an electronic

signature by Watson as an attorney with "Recovery Law Group/Wajda Law," 309 W. 11th Street,

Anderson, Indiana 46016. *Id.*

With the Russell Petition, Watson filed (i) a summary of assets, liabilities and certain

statistical information, (ii) schedules A-J, a declaration (collectively, the "Russell Schedules"), a

statement of financial affairs (the "Russell SOFA"), (iii) a statement of intention (the "Russell

SOI"), (iv) a Chapter 7 statement of current monthly income (the "Russell Form 122A-1"), and

(v) a disclosure of compensation (the "Russell 2016 Disclosure") *Id.* Watson signed the Russell

2016 Disclosure, which stated in part that he agreed to provide the following services: (a) analysis

of Ms. Russell's financial situation, and rendering advice to Ms. Russell in determining whether

to file a petition in bankruptcy; (b) preparation and filing of any petition, schedules, statement of

affairs and plan which may be required; and (c) representation of Ms. Russell at the meeting of

creditors and any adjourned meetings thereof. *Id.* The documents filed by Watson and RLG

disclose the following:

- Ms. Russell has an interest in household goods, furnishings, and electronics, but reflects the word "SPECIFY" in capital letters following each disclosure, but no clarification or specificity is provided. *Id.*

- Ms. Russell has an interest in clothing, which is described as "one fe/male wardrobe" but no clarification or specificity is provided. *Id.*

- Ms. Russell was a party to two executory contracts and unexpired leases as of the Russell Petition Date: one with a "Cell Phone Company" at "Cell Phone Company Address" for a "Cell phone contract" and the other with a "Landlord Name" at "Landlord Address" for a "Rental," but the counter parties to these two contracts is not provided. *Id.*

- Although the Russell Schedule H discloses that Ms. Russell lived in a community property state within the eight years preceding her bankruptcy filing, it also states in response to the question, "In which community state or territory did you live?" the response "None". *Id.*

- The Russell Schedule A provides that Ms. Russell's gross monthly income from her employment with Capital Eye Care was $1,680.00 as of the Russell Petition Date. *Id.* However, the income reported on the Russell Schedules and on the Russell Form 122A-1 reflects that Ms. Russell's gross monthly income in the six months prior to her bankruptcy filing was only $3,640.00. *Id.*

- The Russell SOFA discloses that Ms. Russell had paid $1,950.00 to RLG on June 20, 2024, *id.*, in accordance with the terms of the Russell Retainer Agreement, Russell Ex. 101. However, the

Russell 2016 Disclosure states that Ms. Russell paid only $1,850 to RLG.  Russell Ex. 103.

- The Russell SOI discloses an intent to reaffirm the debt secured by a 2016 Nissan Sentra and to assume two unexpired personal property leases, including one with "Landlord Name" for her "Rental' but the counterparties to the personal property leases are not disclosed.  *Id.*

The Russell Schedules also contain information that should have been redacted as required by Rule 9037 of the Federal Rules of Bankruptcy Procedure.  *Id.*

On September 10, 2024, the Chapter 7 Trustee assigned to her case, Peter J. Barrett ("Mr. Barrett"), convened the required § 341 meeting of creditors (the "Initial Russell Meeting of Creditors").  Russell Ex. 104.  Ms. Russell and Watson appeared at the meeting.  *Id.* 3:3, 25.  The Chapter 7 Trustee had only just received the documents necessary for him to conduct the meeting of creditors the day before the scheduled meeting.  *Id.* 5:9-12.  However, Ms. Russell testified that she had provided all of the necessary documents to RLG several months prior to the Russell Petition Date.  *Id.* 11:13-20.  Watson explained that he was again "having issues with the software."  *Id.* 12:15-17.

At the Initial Russell Meeting of Creditors, Ms. Russell testified that her first point of contact with RLG was Adam Bobel.  *Id.* 8:10-15.  Mr. Bobel is an attorney licensed to practice law in California, Illinois, and Indiana, but not Virginia.  Russell Ex. 105.  Ms. Russell testified that she received her draft bankruptcy filing documents from a paralegal at RLG.  Russell Ex. 104 9:7-23.  Ms. Russell was required to review the draft bankruptcy filing documents on her own, *id.* 10:13-16, and did not have an opportunity to speak to Watson until afterward:

> Q.  Okay.  And let me ask you this, at some point, your case was assigned to Mr. Watson.  Did you find out that the case was assigned to him before or after you reviewed your schedules?
>
> A.  After.

Q.  Did you ever meet with Mr. Watson before your case was filed?

A.  I only talked to him on the phone.

Q.  And how long were those phone calls roughly.

A.  Not very long.  A couple minutes.

*****

Q.  Okay.  But you did not go over your schedules during that phone call?

A.  No.

*Id.* 9:24-10:7, 11:5-7.

The U.S. Trustee also asked Watson about the disparity between Ms. Russell's income on the Russell Schedule I as compared to the Russell Form 122A-1.  *Id.* 6:14-15.  Watson did not have an answer, but instead replied, "I will have to follow up with you on that."  *Id.* 6:19-20. Ms. Russell testified that she thought that the income reflected on the Russell Form 122A-1 was the more accurate of the two and that she was not sure the basis for the lesser amount disclosed on the Russell Schedule I.  *Id.* 6:21-7:4.

During the Initial Russell Meeting of Creditors, Ms. Russell testified that she had been a Virginia resident for the last ten years.[28]  *Id.*  13:23-14:3.  Ms. Russell also testified that she lives with her son and contributes to the household bills in lieu of paying rent.  *Id.* 7:11-17.  Ms. Russell stated that she had given Watson a letter explaining her arrangement with her son, but Watson had not provided that letter to the U.S. Trustee or to the Chapter 7 Trustee.  *Id.* 8:5-7.  Ms. Russell's testimony contradicted the disclosures made under penalty of perjury in the Russell Schedules and the Russell SOFA.

---

[28]    Ms. Russell had not lived in a community property state, as indicated on her Schedule H.  Russell Ex. 103.

At the conclusion of the Initial Russell Meeting of Creditors, the U.S. Trustee had the following exchange with Ms. Russell:

> So, what I'm going to ask at this point, Ms. Russell, I have a lot of concerns about your schedules and, basically, whether you received proper counsel in this case, to be quite honest. I'm going to ask the Trustee to adjourn it so that counsel could actually meet with you and go over these schedules, and that meeting, whether it's by phone or in person, but I think someone needs to meet with you and make sure that what you're filing in the court is accurate.

*Id.* 14:20-15:3. In light of the foregoing, the Chapter 7 Trustee adjourned the meeting. *Id.* 15:14-15.

After the adjournment on September 13, 2024, the U.S. Trustee sent an email to Watson, copying RLG's Director of Legal Operations, Anthony Short ("Short"), and Mulcahy, requesting supplemental documentation and amendments to the filed documents to be provided no later than September 20, 2024. Russell Ex. 106. Neither Watson nor RLG responded. Based on RLG's failure to timely comply with the U.S. Trustee's request for information, Ms. Russell's adjourned meeting of creditors had to be moved from October 1 to October 29, 2024. Russell Ex. 101. On September 26, 2024, the U.S. Trustee sent a follow-up email to Watson, Short, and Mulcahy, requesting the documents and amendments be provided as soon as possible. Russell Ex. 107. In response to this follow-up email, Short sent to Mulcahy and Watson an email the next day with the documents attached. Russell Ex. 101. Short's email indicates that the documentation had already been provided to Watson. *Id.* Despite now having all the requested information readily at hand, Watson and RLG failed to deliver the requested information to the US Trustee. *Id.* On October 4, 2024, the U.S. Trustee sent a third email reminder to Watson, Short, and Mulcahy. Russell Ex. 108. Finally, almost one month after the Initial Russell Meeting of Creditors and the request from the U.S. Trustee and at least eleven days after receiving the documents from Short,

on October 8, 2024, Mulcahy responded by email and provided certain of the requested documents.

Russell Ex. 109.  In his email, Mulcahy explained that he was providing the documents because

"Watson is away from his office."  *Id.*

Included among the provided documents were Ms. Russell's signed, undated schedules and

statements.  *Id.*  The signed, undated versions do not match the versions electronically filed with

the Court.  For example,

> −  The Russell SOFA electronically filed with the Court bears Ms.
>    Russell's declaration under penalty of perjury approximately
>    halfway down the seventh page.  Russell Ex. 103.  The statement
>    of financial affairs provided by RLG bears Ms. Russell's
>    original wet signature at the end of the sixth page.  Russell Ex.
>    109.
>
> −  The first line on the Russell SOI on record with the Court begins
>    with a checked "yes" box.  Russell Ex. 103.  The statement of
>    intention provided by RLG that bears Ms. Russell's original wet
>    signature begins with "Lessor's name:  Landlord Name."
>    Russell Ex. 109.
>
> −  The Russell Form 122A-1 filed with the Court bears
>    Ms. Russell's electronic declaration under penalty of perjury at
>    the bottom of the second page.  Russell Ex. 103.  The statement
>    of current monthly income provided by RLG bears Ms. Russell's
>    original wet signature at the top of the third page.  Russell Ex.
>    109.

In response to the documents provided by Mulcahy, the U.S. Trustee provided Watson, Short, and

Mulcahy on October 23, 2024, with an updated list of the documents it had requested that remained

outstanding.  The U.S. Trustee clarified that RLG had to provide a complete set of the documents

filed by Ms. Russell with her bankruptcy petition and not just the signature pages.  Russell Ex.

110.

The Chapter 7 Trustee reconvened the adjourned meeting of creditors on October 29, 2024

(the "October 28 Adjourned Meeting").  Russell Ex. 111.  Ms. Russell appeared, explaining that

she had started a new job that month and had to take two hours of leave in order to attend the

October 28 Adjourned Meeting. *Id.* 8:16-9:3. She further testified that she believed all outstanding

issues in her bankruptcy case had been addressed:

> When I had spoken to him after the last meeting, he said – he told
> me that everything – everything would be taken care of. I guess
> something happened with his – I don't know if it was his way of –
> of – of filing things. He had – his computer crashed or something
> like that. I don't remember what it was. And, like I said, you know,
> I remember all these things, you and I going over. And when I had
> asked him about it, he said he was – he was overwhelmed and he
> would get with it and then let me know. But, I hadn't – because I
> hadn't heard from him, I thought he took care of it.

*Id.* Ex. 17:9-19. The U.S. Trustee questioned Watson about why the necessary amendments

discussed during the Initial Russell Meeting of Creditors had not yet been filed with the Court. *Id.*

16:1-2. Watson stated that he believed the documents had been filed, *id.* 16:3-5, 11-14, but that

he was currently preoccupied with attending a continuing legal education course, *id.* 18:2-3.

Ms. Russell testified that she had not signed any amended schedules, making it unclear what

documents Watson believed he had filed. *Id.* 18:22-23, 20:2-7. At the conclusion of the October

28 Adjourned Meeting, the Chapter 7 Trustee informed Ms. Russell and Watson that her

appearance at the next adjourned meeting would depend on whether amendments were finally filed

in her case:

> So, just so we're clear. This meeting of creditors is adjourned to
> November 12th at 3 p.m. Ms. Russell, if your schedules get filed,
> you will not need to appear. However, if they don't, you're going
> to have to appear again. So, it's very important to communicate with
> your counsel. Mr. Watson, vice versa, to communicate with your
> client to get these on file.

*Id.* 20:16-22.

On November 12, 2024, the Chapter 7 Trustee held another adjourned meeting of creditors

(the "November 12 Adjourned Meeting"). Russell Ex. 112. Because the amendments to her

schedules had not been filed, Ms. Russell was required to appear at the November 12 Adjourned

Meeting.  *See* Russell Ex. 111 20:16-22.  Watson explained that Ms. Russell was unable to attend

due to her work schedule.  Russell Ex. 112 4:7-9.  Again, the U.S. Trustee asked Watson for an

update on the amendments that were supposed to have been filed over two months previously.  *Id.*

6:22-7:3.  Watson explained:

> The other thing is, I've got amended schedules that – amended
> schedules and some additional information that needs to be –- that
> have been prepared.  They are not entirely correct.  I've been having
> software issues where it does about half of what I ask it to do, and I
> need to correct that.  So, I'm going to be getting her the corrected
> amended schedules and plans.[29]
>
> *****
>
> I've been having some issues with the computer putting the
> amendments out, as I request that it does.  I sent the amendments to
> her, and she said that they needed to be changed again.  So, I need
> to go review – go through them and review them and get them
> corrected, so that I can have her review them and sign them and send
> them to you guys.[30]

*Id.* 4: 13-19, 7:4-10.  Technological challenges apparently plagued Watson throughout this case.

Nevertheless, Watson agreed to file the amendments by Friday, November 15, 2024, at 5:00 P.M.

*Id.* 7:14-21.  Watson failed to file the amendments by the established deadline.  Russell Ex. 113.

On November 25, 2024, the U.S. Trustee sent an additional reminder to Watson.  *Id.*  In light of

RLG's and Watson's failure to file the necessary amendments in Ms. Russell's bankruptcy case,

on November 26, 2024, the U.S. Trustee filed the *Motion to Examine Debtor's Transactions with*

*Thomas Watson, Esquire, Recovery Law Group, APC, and Wajda Law Group, APC, for Return of*

---

[29]  Given that RLG filed a Chapter 7 bankruptcy for Ms. Russell, not a Chapter 13 bankruptcy, it is unclear what
Watson meant by the term "plans."

[30]  As the U.S. Trustee noted, *id.* 7:11-12, RLG was under a duty to file the amendments with the Court, not merely
provide them to the U.S. Trustee and the Chapter 7 Trustee.

*Attorney's Fees, and Imposition of Sanctions, In re Recovery Law Group*, Misc. Pro. No.

24-301-KRH, ECF No. 19 (the "Russell 329 Motion").

On December 3, 2024, the Chapter 7 Trustee held a fifth adjourned meeting of creditors in

Ms. Russell's case (the "December 3 Adjourned Meeting").   *See* Russell Exs. 115, 118.

Ms. Russell testified that she had received draft amendments to her bankruptcy schedules.  Russell

Ex. 118 5:6-10.  Upon review of the draft documents, Ms. Russell asked RLG if the amendments

needed to be further edited to reflect her recent move to California.[31]  *Id.* 5:12-16.  RLG failed to

respond to Ms. Russell's question.  *Id.* 5:17-18.  Ms. Russell testified that she called RLG the

following week to get a response to her question.  *Id.* 6:7-7:9. Her call was transferred to Short,

who informed Ms. Russell that her amendments were "being taken care of," that Watson "was

very busy," and that Watson "would get back with me," but that she had not heard from RLG since

that phone call.  *Id.* 6:7-23, 8:16-24.   Ms. Russell also testified that she had made multiple

unsuccessful attempts to contact RLG:

> Q.  And have you made any efforts to contact Mr. Watson since the
> 12th?
>
> A.  Yes.
>
> Q.  What –- can you tell me about those efforts?
>
> A.  By e-mail.  I've sent maybe three or four of them.  And the last
> phone call, like I said, that I got from him was the 12th.  And he said
> he would go over my amended, you know, questions that I sent him,
> and he would get with me by the end of the night, and I never –- or
> by the end of the day, and I didn't hear back from him.

*Id.* 7:14-19.  When Watson was asked why he had failed to file the draft amendments, Watson

blamed it on "computer problems."  *Id*. 12:6-9.  The U.S. Trustee reminded Watson that during

---

[31]    It appears that RLG emailed Ms. Russell with a copy of the draft amendments for her to again review on her own,
without the assistance of an attorney licensed to practice in Virginia. *Id.* 5:6-6:7.

the last adjourned meeting of creditors, he had "said that [his] computer problems were fixed, as well as [his] software problems." *Id.* 12:13-14.  Watson acknowledged that he did not have a good excuse for his failure but promised that he would "take care of it tomorrow morning, certainly before close of business." *Id.* 12:16-22.

Ms. Russell was visibly distraught at the end of the December 3 Adjourned Meeting.  She was "at a loss for words," and didn't "know what to do." *Id.* 14:20-21; 15:3-4.  She explained that "Short was very, very, very rude to [her] the last time [she] talked to him." *Id.* 15:2-3.  Ms. Russell was so emotional that the Chapter 7 Trustee felt compelled to put on the record because "it won't pick up necessarily on the tape," that "[t]he debtor is in tears, brought to tears, by the actions of her counsel in this case." *Id.* 16:16-19.

The Court finds that RLG breached the Russell Retainer Agreement.  RLG did not review the completed petition, statements, and schedules with Ms. Russell.  RLG and Watson did not provide knowledgeable legal representation for Ms. Russell at the § 341(a) meeting of creditors.  RLG and Watson did not timely respond to inquiries from the Chapter 7 Trustee and the U.S. Trustee.  RLG and Watson did not timely prepare and file the necessary amended statements and schedules.  RLG and Watson were not available to respond to the Ms. Russell's questions throughout the term of her case.  RLG failed to provide the legal services necessary for the administration of Ms. Russell's bankruptcy case.  Ms. Russell suffered damages as a consequence of RLG's breach.

D.      The *Lee* Case, Case No. 24-32962-KRH

On June 20, 2024, Mr. Lee and RLG, by and through Wajda,[32] entered into a Chapter 7

Retainer Agreement (the "Lee Retainer Agreement").  Lee Ex. 113.  Under the terms of the Lee 7

Retainer Agreement, RLG agreed, among other things, to do the following:

4.  Review with the Client and sign the completed petition, statements, and schedules, as well as all amendments thereto, whether filed with the petition or later.

5.  Timely prepare and file the Client's petition, statements, and schedules after receipt of all necessary documentation and payments from the Client.

*****

3.  Provide knowledgeable legal representation for the Client at the § 341(a) meeting of creditors and with regard to motion and/or any motion hearing during the case.

4.  If the Attorney finds it necessary for another attorney to appear and attend the § 341(a) meeting or any court hearing, personally explains to the Client, in advance, the role and identity of the other attorney and provide the other attorney with the "file" in sufficient time to review it and properly represent the Client.

*****

7.  Timely prepare, file, and serve any necessary amended statements and schedules and any change of address, in accordance with information provided by the Client.

8.  Be available to respond to the Client's questions throughout the term of the case.

9.  Prepare, file, and serve timely modifications or amendments to the petition, schedules or statements, when necessary.

*****

14. Provide any other legal services necessary for the administration of this case before the bankruptcy court.

---

[32]   *See* note 11 *supra.*

*Id*.  In exchange for the services RLG agreed to provide, Mr. Lee agreed to pay RLG $1,950.00, inclusive of the applicable filing fee, prior to the filing of his case.  *Id.*  RLG confirmed receipt of the entire amount of the $1,950 flat fee from Mr. Lee by email dated July 5, 2024.  Lee Ex. 114.

On August 9, 2024 (the "Lee Petition Date"), RLG filed a voluntary Chapter 7 petition (the "Lee Petition") on behalf of Mr. Lee.  Lee Ex. 101.  Part 7 of the Lee Petition reflects an electronic signature by Mr. Lee and an electronic signature by Watson as an attorney with "Recovery Law Group/Wajda Law," 309 W. 11th Street, Anderson, Indiana 46016.  *Id.*

With the Lee Petition, Watson filed (i) a summary of assets, liabilities and certain statistical information, (ii) schedules A-J, including a declaration (collectively, the "Lee Schedules"), (iii) a statement of financial affairs (the "Lee SOFA"), (iv) a statement of intention (the "Lee SOI"), (v) a Chapter 7 statement of current monthly income (the "Lee Form 122A-1"), and (vi) a disclosure of compensation (the "Lee 2016 Disclosure").  *Id.*  Mr. Lee's electronic signature affixed to the Lee Petition, Lee Schedules, Lee SOI, and Lee SOFA is dated August 9, 2024.  *Id.*  The documents filed by Watson and RLG disclose the following information:

- Mr. Lee has an interest in household goods, furnishings, and electronics, but reflects the word "SPECIFY" following each disclosure, but no clarification or specificity is provided.  *Id.*

- Mr. Lee has an interest in clothing, which is described as "one fe/male wardrobe," but no clarification or specificity is provided.  *Id.*

- Mr. Lee was a party to two executory contracts and unexpired leases as of the Lee Petition Date:  one with a "Cell Phone Company" at "Cell Phone Company Address" for a "Cell phone contract" and the other with a "Landlord Name" at "Landlord Address" for a "Rental," but the counterparties to these two contracts are not provided.  *Id.*

− Mr. Lee had been employed as a driver with JC Franklin for one and a half years prior to his bankruptcy filing, with gross monthly income of $3,943.03.  *Id.*

− Mr. Lee was the subject of two garnishments, both in the amount of $882.40.  *Id.*

− The Lee SOFA disclosed that Mr. Lee had paid $1,950 to RLG on July 3, 2024, *id.*, in accordance with the terms of the Lee Retainer Agreement, Ex. 113.  However, the Lee 2016 Disclosure stated that Mr. Lee had only paid $1,850 to RLG.  *Id.*

The Lee 2016 Disclosure reflects that RLG further agreed to perform the following services in exchange for the fee:

a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof.[33]

*Id*.

On September 10, 2024, Mr. Barrett, the Chapter 7 Trustee assigned to his case, convened the required § 341 meeting of creditors via Zoom.  Lee 329 Motion ¶ 19.[34]  Watson appeared on the Zoom platform by phone only with no video.  *Id.*  Mr. Lee appeared by video but could not be heard.  The Chapter 7 Trustee dropped the case down on his docket to allow Watson time to fix his video issues, as well as time to reach his client in order to resolve Mr. Lee's technical audio

---

[33] The Lee 2016 Disclosure then includes contradictory language stating that the fee does not include "[a]ny continued meeting of creditors due to failure to appear or a failure to provide requested documents by the Debtor." Lee Ex. 101.

[34] The "Lee 329 Motion" refers to the *Motion to Examine Debtor's Transactions with Thomas Watson, Esquire, Recovery Law Group, APC, and Wajda Law Group, APC, for Return of Attorney's Fees, and Imposition of Sanctions* [*In re Recovery Law Group*, Misc. Pro. No. 24-301-KRH, ECF No. 22].

issues.  *Id.*  When the case was recalled thirty minutes later, Mr. Lee could only be seen but not

heard and Watson was still not on video.  *Id.*  Watson stated that he "could not reach the client"

and offered no explanation for why he was still only participating by phone and not video.  *Id.*

Because Watson and Mr. Lee were unable to proceed with the meeting due to their unresolved

technical issues, the Chapter 7 Trustee permitted Watson to request the meeting be rescheduled by

submitting a request by the close of business.  *Id.*

Instead of submitting a request to the Chapter 7 Trustee as instructed, Watson erroneously

filed a *Motion to Reschedule 341 Hearing* [*In re Lee*, Case No. 24-32962-KRH, ECF No. 10] with

the Court.  The next day, September 11, 2024, Mulcahy advised the U.S. Trustee that Watson's

employment with RLG had been terminated.  Lee 329 Motion Ex. 102.  Based upon RLG's

representation regarding Watson's employment status, the U.S. Trustee provided Mulcahy with

information on how to properly request a rescheduled § 341 meeting of creditors.  *See* Lee Ex.

102.  The U.S. Trustee advised Mulcahy that, although he was "doing quite a bit of cleanup on

[Watson's] cases," RLG was still expected to return the request form as soon as possible.  *Id.*

Neither RLG nor Mulcahy submitted the request.

On September 12, 2024, Watson, on behalf of Mr. Lee, improperly filed another pleading

with the Court styled *Motion to Reschedule* [*In re Lee*, Case No. 24-32962-KRH, ECF No. 11].

The filed pleading was not a motion.[35]  The pleading Watson had filed was a handwritten Notice

of Rescheduled Meeting of Creditors.  *Id.*  The Notice of Rescheduled Meeting of Creditors is a

form utilized by debtors and their counsel to provide notice to all creditors and parties in interest

of a rescheduled meeting *after* the U.S. Trustee has consented to the rescheduling by a docket

---

[35]   On September 13, 2024, this Court issued a notice of deficient filing to Watson regarding the second motion to
reschedule because the docketed document did not match the CM/ECF event code.  *In re Lee*, Case No.
24-32962-KRH, ECF Nos. 12, 14.

entry.  Given that the U.S. Trustee had not yet made such docket entry, because no proper request had been made, the notice was improper.  Again, the Chapter 7 Trustee, by his assistant, contacted Mulcahy and Short to get RLG to properly request a rescheduled meeting.  Lee 329 Motion ¶ 25.

On September 13, 2024, upon receiving a proper request to reschedule the § 341 meeting of creditors, the U.S. Trustee docketed the rescheduled meeting.  Due to the delay and confusion on the part of Watson in submitting the reschedule request, the U.S. Trustee was required to schedule the adjourned meeting for October 29, 2024 (rather than October 1, 2024, as stated by the Chapter 7 Trustee at the initial meeting).  *See In re Lee*, 24-32962-KRH, ECF No. 13.  Pursuant to Local Bankruptcy Rule 2003-1, Watson was required to provide notice of the rescheduled § 341 meeting date within seven days.  The Chapter 7 Trustee's assistant reminded Watson of this requirement on September 13.  Lee Ex. 103.  Watson failed to provide the notice.  Lee Ex. 104.

On September 23, 2024, the U.S. Trustee contacted Mulcahy, informing him that Watson had failed to timely serve notice of the rescheduled meeting of creditors.  *Id.*  The U.S. Trustee further informed Mulcahy that if notice was not provided by September 24, 2024, the meeting would not be able to be conducted on October 29, 2024, due to insufficient notice.  *Id.*  Mulcahy failed to respond to the U.S. Trustee's email.

On September 27, 2024, the Chapter 7 Trustee informed Mulcahy, Short, and Watson that the meeting could not be conducted on October 29 due to RLG's failure to properly notice it in accordance with Local Bankruptcy Rule 2003-1.  *Id*.  The Chapter 7 Trustee offered to entertain one more request to reschedule the meeting.  *Id*.  Despite having been informed of the process for requesting a rescheduled meeting, Mulcahy ignored the Chapter 7 Trustee's instructions, failed to submit the required form, and instead asked the Chapter 7 Trustee to reschedule the meeting because "Watson apparently is on vacation at the present time."  *Id*.  After numerous exchanges

46

between the Chapter 7 Trustee, Mulcahy, and Short, RLG eventually submitted the second reschedule request.  *Id*.  On October 2, 2024, the U.S. Trustee docketed a second rescheduled meeting date for November 12, 2024.  *In re Lee*, Case No. 24-32962-KRH, ECF No. 15.  On October 7, 2024, Watson[36] timely provided notice of the rescheduled meeting in accordance with Local Bankruptcy Rule 2003-1.  *In re Lee*, Case No. 24-32962-KRH, ECF No. 16.

On November 12, 2024, the Chapter 7 Trustee convened the rescheduled § 341 meeting of creditors.  Lee Ex. 105.  Mr. Lee appeared by Zoom.  *Id.* 3:1-2.  Watson failed to appear.  *Id.* 3:3-4, 4:6-12.  The U.S. Trustee emailed Watson, reminding him that he needed to join Mr. Lee on the Zoom platform so that the Chapter 7 Trustee could finally conduct a meeting of creditors.  Lee Ex. 106.  Watson eventually joined late.  Lee Ex. 105 4:17-19.

Once Watson finally joined the meeting, the Chapter 7 Trustee asked him to explain the delay in convening the meeting.  *Id.* 6:18-20.  Watson explained that he has "had problems logging in" and his "calendar has been messed up."  *Id.* 6:18-25.  Mr. Lee apologized for his technical issues at the initial meeting.  *Id.* 7:1-3.  The Chapter 7 Trustee advised Mr. Lee that the meeting would not have been concluded regardless because Watson had not filed the required paperwork, to which Watson responded that "he didn't realize [he] needed to file the paperwork [himself]" even though the Chapter 7 Trustee specifically told him to do so.  *Id.* 7:6-15.

During the rescheduled meeting of creditors, the Chapter 7 Trustee and the U.S. Trustee both questioned Watson and Mr. Lee concerning RLG's representation of Mr. Lee.  Watson stated that he had met with Mr. Lee by video prior to filing the Lee Petition.  He believed he discussed Mr. Lee's bankruptcy paperwork with him during the video conference.  *Id.* 8:10-25.  Watson explained that when he received Mr. Lee's file from RLG, Mr. Lee had already completed his

---

[36]  Presumably, Watson had been reinstated by RLG since his termination on September 11.

required schedules and statements and the decision to file the case under Chapter 7 had already

been made. *Id.* 9:22-10:7. Watson filed the completed bankruptcy documents with the Court,

although he had admitted to some "difficulties logging on to ECF," having a "computer crash" and

having a "hard time getting the passwords for ECF to work like they are supposed to." *Id.*

10:10-13.

Mr. Lee's account of events was inapposite to the version recited by Watson. Mr. Lee

testified that he had spoken to Watson for the first time on the day before the Lee Petition Date.

Mr. Lee testified that the conversation with Watson lasted "three to five minutes, if that." *Id.*

13:22-25; 14:18-20. When asked whether Watson went over Mr. Lee's draft bankruptcy

documents during that phone conversation, Mr. Lee testified, "No, not really." *Id.* 14:21-25;

19:13-19. Mr. Lee testified that he received the draft documents from someone at RLG, reviewed

them on his own, signed the signature pages, and returned the signed signature pages to RLG. *Id.*

17:17-19:19.

Mr. Lee also testified to difficulties he experienced in trying to communicate with Watson.

Mr. Lee stated that he tried to call and email Watson multiple times prior to the Lee Petition Date,

but never heard back from Watson until the day before his case was filed. *Id.* 15:2-4. Mr. Lee

testified that the one time he was able to reach Watson, Watson said he was busy and would call

Mr. Lee back, but Watson never did. *Id.* 15:14-16. After that one brief phone conversation, all of

Mr. Lee's calls went straight to Watson's voicemail. *Id.* 15:16-18. Mr. Lee testified, "I don't

know what's going on, but something – something ain't right." *Id.* 16:4-5.

During the rescheduled § 341 meeting of creditors, Mr. Lee testified that he did not have a

lease or a landlord, *id.* 21:20-22:5, although RLG had listed a "Landlord Name" at "Landlord

Address" for a "Rental," on Mr. Lee's Schedule G, Lee Ex. 101. Mr. Lee also explained that he

had to take a full day of leave from work in order to participate in the rescheduled § 341 meeting of creditors.  Lee Ex. 105 28:4-17.

The Chapter 7 Trustee was required to further adjourn the rescheduled § 341 meeting of creditors.  On November 14, 2024, the U.S. Trustee emailed Watson requesting supplemental documentation and requesting amendments be filed to the Lee Schedules no later than November 22, 2024.  Lee Ex. 107.  No response was forthcoming.  The U.S. Trustee requested a status update on November 25, 2024.  Lee Ex. 108.  Again, Watson failed to respond.  On November 26, 2024, the U.S. Trustee filed the Lee 329 Motion.

Even with the Lee 329 Motion pending, Watson still did not provide the missing documentation or file the necessary amendments to the Lee Schedules.  On December 3, 2024, the Chapter 7 Trustee conducted a further adjourned § 341 meeting of creditors.  Lee Ex. 112.  Watson appeared at the adjourned meeting and was asked about the status of the missing documents and the necessary amendments.  *Id.* 2:2, 3:9-5:4.  Watson promised to get the necessary amendments to the Lee Schedules filed by the following day, *id.* 3:14-15, and to provide the missing documents to the U.S. Trustee either later that day or early the following morning, *id.* 4:6-10.  Watson failed to comply.  *See* Lee Ex. 109 (documents and amendments were still outstanding as of December 9, 2024).

The Court finds that RLG breached the Lee Retainer Agreement.  RLG did not review the completed petition, statements, and schedules with Mr. Lee.  RLG and Watson did not provide knowledgeable legal representation for Mr. Lee at the § 341(a) meeting of creditors.  RLG and Watson did not timely respond to inquiries from the Chapter 7 Trustee and the U.S. Trustee.  RLG and Watson did not timely prepare and file the necessary amendments to the Lee Schedules.  RLG and Watson were not available to respond to Mr. Lee's questions throughout the term of his case.

RLG failed to provide the legal services necessary for the administration of Mr. Lee's bankruptcy case.  Mr. Lee suffered damages as a consequence of RLG's breach.

### E.    The *Poulston* Case, Case No. 24-33369-KRH

On September 9, 2024 (the "Poulston Petition Date"), RLG filed a voluntary petition (the "Poulston Petition") for relief under Chapter 7 of the Bankruptcy Code on behalf of Ms. Poulston. Poulston Ex. 101.  Part 7 of the Poulston Petition reflects an electronic signature by Ms. Poulston and an electronic signature by Watson as an attorney with "Recovery Law Group/Wajda Law," 309 W. 11th Street, Anderson, Indiana 46016.  *Id.*

With the Poulston Petition, Watson filed (i) a summary of assets, liabilities and certain statistical information, (ii) schedules A-J, including a declaration (collectively, the "Poulston Schedules"), (iii) a statement of financial affairs (the "Poulston SOFA"), (iv) a statement of intention (the "Poulston SOI"), (v) a Chapter 7 statement of current monthly income (the "Poulston Form 122A-1"), and (vi) a disclosure of compensation (the "Poulston 2016 Disclosure").  *Id.*  The Poulston filings disclose the following:

- The Poulston SOFA states that Ms. Poulston paid $1,850 to RLG in 2022, over two years prior to the Poulston Petition Date.  *Id.* However, the Poulston 2016 Disclosure reflects that Ms. Poulston paid $1,950 to RLG.  *Id.*

- The Poulston Schedule A/B discloses an interest in certain real estate located at 11127 Farmville Road, Farmville, Virginia 23901 (the "Residence"), valued at $134,000.00.  *Id.*  The Poulston Schedules further indicate that the Residence is deeded in the name of Ms. Poulston's spouse and values Ms. Poulston's portion of the Residence at $0.00.  *Id.*  Ms. Poulston did not claim any exemption in the Residence.  *Id.*

- Ms. Poulston was a party to two executory contracts and unexpired leases as of the Poulston Petition Date:  a "Cell phone contract" with a "Cell Phone Company" and a "Rental" with "Landlord Name," but the counterparties to these two contracts are not provided. *Id.*

- Ms. Poulston does not pay rent or a mortgage payment. *Id.*

- Schedule J reflects that Ms. Poulston lives with her twenty-year-old daughter and three-year-old grandson. *Id.*

- Per her Schedule I, Ms. Poulston was employed with Prince Edward County Public Schools as a van/bus driver for twenty years and her gross monthly income from this job was $1,098.48. *Id.* Schedule I also discloses that Ms. Poulston received SNAP benefits in the amount of $435.00 per month. *Id.* Notwithstanding the foregoing, the Poulston SOFA reflects that Ms. Poulston had no income for 2022, 2023 or 2024 and the Poulston Form 122A-1 states that Ms. Poulston had no income during the six months prior to her bankruptcy filing. *Id.*

- Ms. Poulston's total unsecured debt was $13,421.17. *Id.* Of this amount, Ms. Poulston owed $10,433.54 to Lendmark Financial Services ("Lendmark").[37] *Id.*

- The Poulston SOFA indicates that Ms. Poulston was the subject of a pending garnishment action by Lendmark with a hearing scheduled for September 10, 2024. *Id.*

The Poulston 2016 Disclosure further reflects that RLG agreed to perform the following services

in exchange for the fee:

a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof.

---

[37] Lendmark received a judgment against Ms. Poulston in the principal amount of $8,385.74 with $62 in costs and $1,257.86 in attorney's fees, bearing 35.66 percent interest, on May 14, 2024. The judgment was entered approximately two years after Ms. Poulston had paid RLG in full for her bankruptcy case to be filed. Poulston Ex. 102. Lendmark then attempted to garnish the bank account of Ms. Poulston, but such garnishment was returned on September 10, 2024, reflecting "no funds." Poulston Ex. 103. Ms. Poulston testified during her meeting of creditors that she visited the state court, where she was advised that she did not earn enough in wages to be garnished. Poulston Ex. 107 14:16-18.

*Id.*  Like the Lee 2016 Disclosure, the Poulston 2016 Disclosure also stated that the fee did not

include "[a]ny continued meeting of creditors due to failure to appear or a failure to provide

requested documents by the Debtor," contradicting the representation that the fee included "any

adjourned" 341 meetings.  *Id.*

The Poulston Petition represents that Ms. Poulston had received the required credit

counseling course prior to the Poulston Petition Date; however, a copy of Ms. Poulston's credit

counseling certificate was not attached to the Poulston Petition.  *Id.*  In accordance with Local

Bankruptcy Rule 1007-2, the Court issued a notice requiring Ms. Poulston to file her certificate no

later than September 12, 2024, or to attend a hearing on October 9, 2024, (the "October 9 Hearing")

to determine why her case should not be dismissed.  *In re Poulston*, Case No. 24-33369-KRH,

ECF Nos. 4. 10.  Watson failed to timely file the certificate.  Watson also failed to advise Ms.

Poulston about the October 9 Hearing.  Instead, Watson appeared at the October 9 Hearing and

orally requested additional time to file the certificate.  Oct. 9, 2024, Hr'g Tr. 2:18-19, *In re

Poulston*, Case No. 24-33369-KRH, ECF No. 34.  The Court directed Watson to immediately file

the certificate and continued the hearing to October 23, 2024, to ensure compliance (the

"Continued Credit Counseling Hearing").  *Id.* 4:13-5:1.

During the October 9, Hearing, the U.S. Trustee advised the Court that it had not been able

to conduct Ms. Poulston's § 341 meeting of creditors scheduled for October 8, 2024.  *Id.* 3:6-8.

The U.S. Trustee informed the Court that Watson had been instructed to submit a request to

reschedule by the end of the day on October 8, but that he had failed to do so.  *Id.* 3:8-11.  The

Court directed Watson to immediately submit the request to the U.S. Trustee and Watson agreed

to do so.  *Id.* 3:23-4:3.

Watson failed to submit the request. Instead, Watson erroneously filed a *Motion to Reschedule 341 Hearing* [*In re Poulston*, Case No. 24-33369-KRH, ECF No. 12] with the Court.[38] As the U.S. Trustee had done previously in the *In re Lee* case, the U.S. Trustee contacted RLG, requesting the firm to submit a proper request.  Poulston Ex. 104.  By email dated October 10, 2024, and copying Mulcahy, Short did file the request, permitting the U.S. Trustee to docket a rescheduled meeting.  *Id.*  Watson timely provided notice of the rescheduled meeting.  *In re Poulston*, Case No. 24-33369-KRH, ECF No. 14.

The Court conducted the Continued Credit Counseling Hearing on October 23, 2024. Watson had failed to file the missing certificate with the Court prior to the Continued Credit Counseling Hearing.  Watson compounded that transgression by failing to appear at the Continued Credit Counseling Hearing.  He had also failed to advise Ms. Poulston about the Continued Credit Counseling Hearing.  Instead of simply dismissing the Poulston bankruptcy case, the Court issued an *Order to Show Cause* [*In re Poulston*, Case No. 24-33369-KRH, ECF No. 17], which directed Watson to appear on November 6, 2024, (the "First Show Cause Hearing") and show cause why he should not be sanctioned for his failure to file the credit counseling certificate and for his failure to appear at the Continued Credit Counseling Hearing.

Watson did appear at the First Show Cause Hearing.  Watson still had not filed the credit counseling certificate.  Watson explained that he had "been having some very serious computer issues" but believed he had "finally got them resolved" "within the last two days."  Nov. 6, 2024, Hr'g Tr. 2:12-21, *In re Poulston*, Case No. 24-33369-KRH, ECF No. 33.  When the Court

---

[38]   Watson had made the same mistake a month earlier in the *In re Lee* case, as more fully discussed in section 4.D *supra.*

questioned why the credit counseling certificate had not been filed in the last two days since his computer issues had been resolved, Watson stated that

> I thought that I had -- I was trying to do it last night.  I was trying to do it the – since the middle of last week.  I was having problems logging into the system.  It was not accepting my change of passwords.  I have a copy of the certificate with me.  I can hand it to the Court.  I can hand it to the Trustee.  I don't know what else to do at this point.

*Id.* 2:24-3:5.  The Court directed Watson to physically file the certificate with the Clerk's Office before leaving the courthouse.  Watson also blamed his failure to appear at the Continued Credit Counseling Hearing on "computer issues." *Id.* 3:14-16.

At the conclusion of the First Show Cause Hearing, the Court sanctioned Watson in the amount of $100 for his failure to appear at the Continued Credit Counseling Hearing.  The Court admonished Watson, "Now, that is a warning, okay, to get your act together, because if you continue to do this, there will be additional sanctions and they won't be in that amount.  They'll be very consequential." *Id.* 5:16-19.  Immediately following the hearing, Watson went to the Clerk's Office, manually filed the credit counseling certificate, and paid the $100 sanction.

On November 19, 2024, the Chapter 7 Trustee assigned to Ms. Poulston's case, Jennifer West, convened the rescheduled § 341 meeting of creditors.  Poulston Ex. 107.  Ms. Poulston appeared at the rescheduled § 341 meeting of creditors; Watson did not. *Id.* 3:23-4:18. Ms. Poulston testified that she had taken the entire day off from work to attend the meeting at 9:00 a.m. *Id.* 9:20-21.  The U.S. Trustee emailed Watson to alert him that he needed to log onto the Zoom platform and attend the meeting of creditors.  Poulston Ex. 108.  Only then did Watson join the meeting of creditors.  Poulston Ex. 107 5:5-6.  The U.S. Trustee inquired of Watson why he was not initially present when Ms. Poulston's case was called at 9:00 a.m., to which Watson responded that he thought the meeting was scheduled for 10:00 a.m. *Id.* 7:24-8:3. That response begged the

next obvious question:  why was Watson not present at 10:00 a.m. when Ms. Poulston's case was recalled?  *Id.* 8:4-11.  Ultimately, Watson had to admit that the email from the U.S. Trustee (which was sent at 10:44 a.m.) was the necessary prompt for him to log onto the Zoom platform.  *Id.* Watson had not provided certain required documentation to the Chapter 7 Trustee or to the U.S. Trustee prior to the rescheduled meeting of creditors.  When questioned why he had not done so, Watson explained that he had "computer issues" and "problems with scheduling," but that he had now "gotten the new computer working."  *Id.* 8:12-9:2.

During this rescheduled § 341 meeting of creditors, Ms. Poulston testified that she had never met Watson before the rescheduled § 341 meeting of creditors.  She testified that she had only had one very brief five-to-ten-minute phone conversation with Watson, which took place after the Poulston Petition Date.  *Id.* 10:21-11:23.  Ms. Poulston reviewed the draft Poulston Petition and the accompanying bankruptcy documents on her own with her daughter.  They did not receive any assistance from either Watson or RLG.  *Id.* 11:24-12:11, 13:3-11, 13:14-14:7.  Ms. Poulston confirmed that she had not been informed by Watson or RLG about the various hearings scheduled in her bankruptcy case.  Ms. Poulston was not aware that her bankruptcy case was ripe for possible dismissal for Watson's failure to file her credit counseling certificate.  *Id.* 14:8-15:18. Much like the pattern experienced by other RLG clients, Ms. Poulston testified about the extreme difficulty she encountered in contacting Watson.  *Id.* 11:1-5.

Most sadly, Ms. Poulston testified about her Residence.  According to the Poulston Schedules, the Residence was deeded in the name of Ms. Poulston's spouse.  Poulston Ex. 101. Ms. Poulston testified that her husband died in 2020 without a will and that her husband had no children other than the three they shared.  Ms. Poulston confirmed that there was no mortgage on

the Residence.  RLG had failed to claim an exemption for the Residence in the Poulston Schedules.

Poulston Ex. 107 16:17-17:10.

Based on Ms. Poulston's testimony at the rescheduled meeting of creditors, on November

20, 2024, the Chapter 7 Trustee advised Ms. Poulston that she would have to administer the

Residence as an asset of Ms. Poulston's bankruptcy estate.  Poulston Ex. 109.[39]  As the Residence

was unencumbered and RLG had left it completely unprotected by failing to claim any exemption,

the Residence was a valuable asset.  The Chapter 7 Trustee would be required to liquidate the

Residence for the benefit of the creditors of Ms. Poulston's bankruptcy estate.  *Id.*  The Chapter 7

Trustee invited Watson to discuss potential options to address the equity in the Residence to avoid

a forced sale.  *Id.*  Watson and RLG failed to respond to the Chapter 7 Trustee's entreaty.

On November 22, 2024, the U.S. Trustee emailed Watson, requesting additional documents

be provided and that necessary amendments be filed no later than December 6, 2024.  Poulston

Ex. 110.  When Watson failed to provide the requested documents and failed to file the necessary

amendments, the U.S. Trustee filed its *Motion to Examine Debtor's Transactions with Thomas*

*Watson, Esquire, Recovery Law Group, APC, and Wajda Law Group, APC, for Return of*

*Attorney's Fees, and Imposition of Sanctions* [*In re Recovery Law Grp.*, Misc. Pro. No.

24-301-KRH, ECF No. 21] (the "Poulston 329 Motion").

The Court finds that RLG did not review the completed petition, statements, and schedules

with Ms. Poulston prior to the Poulston Petition Date.  The Court finds that the Poulston Petition

was not timely filed.  RLG and Watson did not provide knowledgeable legal representation for

Ms. Poulston.  The Poulston bankruptcy case should not have been filed under Chapter 7.  The

---

[39]   The Chapter 7 Trustee took the position that because Mr. Poulston died intestate, title to the Residence passed to
Ms. Poulston.

Residence should not have been left unprotected.  RLG and Watson did not provide knowledgeable legal representation for Ms. Poulston at the § 341(a) meeting of creditors.  RLG and Watson did not timely respond to inquiries from the Chapter 7 Trustee and the U.S. Trustee.  RLG and Watson did not timely prepare and file the necessary amendments to the Poulston Schedules.  RLG and Watson were not available to respond to Ms. Poulston's questions throughout the term of her case. RLG and Watson failed to keep Ms. Poulston informed about the Court hearings scheduled in her case. RLG failed to provide the legal services necessary for the administration of Ms. Poulston's bankruptcy case.

###   5.   Variations Between the Unfiled, Signed Documents and the Filed Documents in the Five Consumer Bankruptcy Cases at Bar

For months, the U.S. Trustee unsuccessfully sought to obtain copies of the original bankruptcy documents reviewed by the Affected Debtors in the Five Consumer Bankruptcy Cases at Bar. Those were the original bankruptcy documents that accompanied the signature pages which the Affected Debtors were instructed to "[p]rint . . . [h]and-sign . . .  but NOT [to] DATE" (the "Original Executed Documents").   Lee Ex. 113; Poulston Ex. 117; Russell Ex. 120; Linderman Ex. 136.  The U.S. Trustee wanted to compare the Original Executed Documents with the documents electronically filed in the Five Consumer Bankruptcy Cases at Bar to which RLG affixed the Affected Debtors' electronic signatures.  It was not until January of 2025, after Mr. Sandler intervened, that RLG finally provided the Original Executed Documents to the U.S. Trustee.  Review of these documents reveals notable, glaring differences between the Original Executed Documents that were physically signed by the Affected Debtors and the versions filed by RLG with the Court bearing the Affected Clients electronic signatures. The following exhibits were admitted at Trial (defined *infra*) without objection:

**Table 1.  *In re Linderman*, Case No. 24-31714-KRH:  Comparison of Filed Documents (Linderman Ex. 123) with Original Executed Documents (Linderman Ex. 136 & Global Ex. J)**

| Schedules | Differences |
|---|---|
| Petition | - Attorney for Ms. Linderman differs |
| A/B | - Vehicle value does not match<br>- Furnishings, electronics, clothing, jewelry values do not match<br>- Deposits of money- accounts and values do not match |
| C | - Property exempted and exemption amounts do not match |
| D | - Lienholder claim amount, collateral value, and unsecured portion differs |
| E/F | - Creditor names and amounts do not match |
| G | - Contracts/leases do not match |
| H | - Codebtor missing from schedules sent to Ms. Linderman |
| I | - Income amount differs |
| J | - Expense type and amounts do not match<br>- Monthly net income differs |
| SOFA | - Information different and/or missing including income, pre-petition payments, and amount of payment paid to RLG |
| SOI | - Schedule D creditor missing from schedule filed with the Court<br>- Unexpired leases missing from schedule sent to Ms. Linderman |
| 2016 Disclosure | - Excluded services are missing from disclosure sent to Ms. Linderman |
| Form 122A-1 | - Income amount differs |
| Creditor Matrix | - List of creditors differs |

**Table 2. *In re Russell*. Case No. 24-32957-KLP:  Comparison of Filed Documents (Russell Ex. 103) with Original Executed Documents (Russell Ex. 120 & Global Ex. J)**

| Schedules | Differences |
|---|---|
| Petition | - Estimated liabilities do not match<br>- Attorney address does not match |
| A/B | - Vehicle mileage and value do not match<br>- Furnishings, electronics, clothing, and jewelry values do not match<br>- Deposits of money- accounts and values do not match<br>- Retirement/IRA amount does not match |

| | | |
|---|---|---|
| | - | Tax refunds do not match |
| | - | Life Insurance amount does not match |
| C | - | Property exempted and exemption amounts do not match |
| D | - | Lienholder claim amount, collateral value, and unsecured portion do not match |
| E/F | - | Creditor names and amounts do not match |
| I | - | Income amount differs |
| J | - | Expense type and amounts do not match |
| | - | Monthly net income differs |
| SOFA | - | Information different and/or missing including previous income, property garnished, amount paid to RLG, and closed checking account |
| 122A-1 | - | Income amount differs |
| Creditor Matrix | - | List of creditors differs |

| Table 3. *In re Lee*, Case No. 24-32962-KRH:  Comparison of Filed Documents (Lee Ex. 101) with Original Executed Documents (Lee Ex. 114 & Global Ex. J) | | |
|---|---|---|
| **Schedules** | | **Differences** |
| A/B | - | Vehicle mileage and value do not match |
| | - | Furnishings, electronics, clothing, and jewelry values do not match |
| | - | Deposits of money- accounts and values do not match |
| | - | Tax refunds do not match |
| C | - | Property exempted and exemption amounts do not match |
| E/F | - | Creditor names/amounts do not match |
| I | - | Income amounts do not match |
| J | - | Expense type and amounts do not match |
| | - | Monthly net income differs |
| SOFA | - | Information different including places lived in the last 3 years, sources of income, property garnished, gambling, and business helping to deal with creditors |
| 2016 Disclosure | - | Services not included in fee missing from disclosure sent to Mr. Lee |
| Form 122A-1 | - | Income amount differs |
| Creditor Matrix | - | List of creditors differs |

| **Table 4. *In re Poulston*, Case No. 24-33369-KRH: Comparison of Filed Documents (Poulston Ex. 101 with Original Executed Documents (Poulston Ex. 117 & Global Ex. J)** | |
|---|---|
| **Schedules** | **Differences** |
| A/B | - Real Estate missing from schedules sent to Ms. Poulston<br>- Vehicle make/model/value do not match<br>- Furnishings, electronics, and jewelry values do not match<br>- Deposits of money- accounts and values do not match |
| C | - Property exempted and exemption amounts do not match |
| D | - Lienholder missing from schedules sent to Ms. Poulston |
| E/F | - Creditor names and amounts do not match |
| I | - Income amounts do not match |
| J | - Dependents ages do not match<br>- Expense type and amounts do not match<br>- Monthly net income differs |
| SOFA | - Information different and/or missing including garnishment and losses |
| 2016 Disclosure | - Disclosure filed with the court is $100 higher than that sent to Ms. Poulston<br>- Services not included in fee missing from disclosure sent to Ms. Poulston |
| 122A-1 | - Income amount differs |
| Creditor Matrix | - List of creditors differs |

Global Ex. N.

6. **Consolidation of Proceedings**

On September 4, 2024, the U.S. Trustee filed its first motion for contempt and sanctions as to Watson and RLG in Ms. Pauley's bankruptcy case (the "First Contempt Motion"). *In re Pauley*, Case No. 24-32478-KRH, ECF No. 15. The First Contempt Motion requested the Court to find Watson and RLG in contempt for violating the terms of the Sorgho Consent Order. By the end of October 2024, the U.S. Trustee had filed four additional motions for contempt and sanctions as to Watson and RLG in the other four Affected Debtors' bankruptcy cases (together with the First

Contempt Motion, the "Contempt Motions"). *In re Recovery Law Grp.*, Misc. Pro. No. 24-301-KRH, ECF 6; *In re Russell*, Case No. 24-32957-KLP, ECF 16; *In re Lee*, Case No. 24-32962-KRH, ECF 22; *In re Poulston*, Case No. 24-33369-KRH, ECF 18.

At the request of the U.S. Trustee and with the consent of RLG and Mr. Watson, the Court ordered the Clerk to open a miscellaneous proceeding (this "Miscellaneous Proceeding"). *See* Order, *In re Recovery Law Grp.*, Misc. Pro. 24-301-KRH, ECF No. 2. Contemporaneously therewith, the Court entered an *Order Approving Stipulation and Continuing Hearing on Motion to Examine Debtor's Transactions with Thomas Watson, Esquire, Recovery Law Group, APC, and Wajda Law Group, APC* [*In re Recovery Law Grp.*, Misc. Pro. No. 24-301-KRH, ECF No. 3] (the "Order Approving Stipulation"). The Order Approving Stipulation was substantially similar to the Order Approving Pauley Stipulation with one notable difference. In addition to ordering RLG to pay monies over to Ms. Pauley and to place reasonable conditions upon RLG's ability to practice before this Court, the Order Approving Stipulation also required Watson to file all necessary amendments to Ms. Pauley's schedules no later than October 10, 2024, *id.* at 3, as Watson had agreed at the October 9, 2024, hearing, on the Pauley 329 Motion. The Order Approving Stipulation was endorsed by Mulcahy, in his capacity as general counsel for RLG and by Watson individually.[40]

By its *Order Consolidating Contested Matters and Excusing Debtors from Attendance at Hearing* [*In re Recovery Law Grp.*, Misc. Pro. 24-301-KRH, ECF No. 13], the Court consolidated

---

[40]   Despite his endorsement on the Order Approving Stipulation as "seen and agreed," Watson failed to timely file the necessary amendments in Ms. Pauley's case by the close of business on October 10, 2024. As noted, the signature block indicates that Watson authorized his signature be affixed to the order on October 11, 2024 – one day after the deadline for compliance. The Court never received an explanation as to why Watson endorsed the order knowing he would be in immediate violation of it.

the Contempt Motions and the five 329 Motions[41] (the "Consolidated Contested Matters).   The

Court set a preliminary hearing on the Consolidated Contested Matters for December 4, 2024.

Order Setting Preliminary Hr'g on Consolidated Contested Matters, *In re Recovery Law Grp.*,

Misc. Pro. 24-301-KRH, ECF No. ECF 17.

During the December 3rd adjourned meeting of creditors conducted in Ms. Russell's

bankruptcy case, the U.S. Trustee asked Watson if he had seen the various 329 Motions.   Russell

Ex. 118 13:3-13.   Watson remarked that while he had received notice of the 329 Motions, he had

not read them.   *Id.* 13:15-20.

On December 4, 2024, the U.S. Trustee, through counsel, appeared at the preliminary

hearing on the Consolidated Contested Matters.   Neither Watson nor RLG appeared.   At the

conclusion of the preliminary hearing, the Court entered a *Scheduling Order* [*In re Recovery Law

Grp.*, Misc. Pro. No. 24-301-KRH, ECF No. 26] (the "Scheduling Order") for the Consolidated

Contested Matters.   The Scheduling Order required Watson and RLG to file an answer or answers

to the Contempt Motions no later than December 18, 2024.   *Id.* ¶ 1.   The Court also set the final

evidentiary hearing on the Consolidated Contested Matters for January 16, 2025.   *Id.* ¶ 3.

In accordance with the terms of the Scheduling Order, on December 18, 2024, RLG,

through Mr. Sandler, timely filed a response to Contempt Motions, Resp. of RLG to Mot. to Hold

Watson & RLG in Contempt & for Sanctions.   *In re Recovery Law Grp.*, Misc. Pro. No.

24-301-KRH, ECF No. 32.   RLG subsequently amended its response.   Am. Resp. of RLG to Mot.

---

[41]   While the Contempt Motions were pending, on November 26, 2024, the U.S. Trustee filed Motions to Examine Debtor's Transactions with Thomas Watson, Esquire, Recovery Law Group, APC, and Wajda Law Group, APC, for Return of Attorney's Fees, and Imposition of Sanctions in each of the Five Consumer Bankruptcy Cases at Bar (previously defined herein as the "Linderman 329 Motion," *supra* n. 12, the "Pauley 329 Motion," *supra* p. 29, "Russell 329 Motion," *supra* at p. 40, the Lee 329 Motion," *supra* n. 34, and the "Poulston 329 Motion," *supra* p. 56, and together jointly now referred to as the "329 Motions").   Copies of the 329 Motions were served by email upon Watson and Mulcahy, as well as by first class mail on Watson and RLG.

to Hold Watson & RLG in Contempt & for Sanctions, *In re Recovery Law Grp.*, Misc. Pro. No.
24-301-KRH, ECF No. 39.

Watson failed to file any responsive pleading in accordance with the Scheduling Order.
The U.S. Trustee properly served Watson with a copy of its request for entry of default based on
his failure to respond.  *In re Recovery Law Grp.*, Misc. Pro. 24-301-KRH, ECF No. 35.   In
accordance with Bankruptcy Rule 7055 and Local Bankruptcy Rule 7055-1, the Clerk of Court
entered default as to Watson in connection with the Contempt Motions. *In re Recovery Law Grp.*,
Misc Pro. No. 24-301-KRH, ECF No. .36.

On January 21, 2025,[42] the Court conducted the trial (the "Trial") of the Consolidated
Contested Matters.  The U.S. Trustee and RLG appeared at the Trial.  Watson did not appear.
During the Trial, the U.S. Trustee admitted all of its proposed exhibits without objection by RLG.
While RLG did not introduce any documentary evidence, RLG called Mulcahy to testify on its
behalf.  In consideration of the evidence and arguments made at the Trial, the Court makes the
following conclusions of law.

### *Conclusions of Law*

As this Court has had prior opportunity to observe, lawyers serve a critical function in our
society.  Lawyers are entrusted with the duty of serving their clients' best interests, within the
confines of the law and in accordance with the rule of law.  To serve such noble ends, lawyers are
deemed officers of the Court and are charged with the "special responsibility for upholding the
quality of justice within the judicial process." *U.S. Trustee v. Jones* (*In re Alvarado*), 363 B.R.
484, 489-90 (Bankr. E.D. Va. 2007); *see also In re Vaughan*, Case No. 13-31527, 2014 WL

---

[42]   Although originally scheduled for January 16, 2025, the Trial had to be rescheduled due to an unanticipated
courthouse closure.

176589, at *4, 2014 Bankr. LEXIS 168, at *14 (Bankr. E.D. Va. Jan. 15, 2014). Both courts and clients must be able to rely upon the competence, diligence, and dedication of the attorneys who comprise the bar of the state in which they are admitted to practice. When an attorney falls short of meeting these standards, the Court must act to protect the integrity of the judicial system.

To that end, section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and includes "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). This broad grant of statutory authority provides this Court with the power to sanction counsel and to discipline unprofessional conduct. *In re Gates*, Misc. Pro. No. 18-00301-KRH, 2018 WL 1684302, at *2, 2018 Bankr. LEXIS 1046, at *5 (Bankr. E.D. Va. Apr. 5, 2018) (first quoting *In re Ulmer*, 363 B.R. 777, 781 (Bankr. D.S.C. 2007); then citing *In re Johnson*, No. 07-33312-KRH, 2008 WL 183342, at *5, 2008 Bankr. LEXIS 164, at *12-13 (Bankr. E.D. Va. Jan. 18, 2008); and then citing *Computer Dynamics, Inc. v. Merrill* (*In re Computer Dynamics, Inc.*), 252 B.R. 50, 64 (Bankr. E.D. Va. 1997), *aff'd*, 10 F. App'x 141 (4th Cir. 2001)). This Court also has the inherent authority "to discipline attorneys who appear before it," *In re Palumbo Family P'ship*, 182 B.R. 447, 468 (Bankr. E.D. Va. 1995) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

At the Trial of the Consolidated Contested Matters, the Court had to determine whether RLG and Watson failed to adequately represent their clients. The Court also had to decide whether RLG and Watson should be held in contempt of Court for violation of various orders of this Court, including the Sorgho Consent Order. For the reasons stated herein, the Court concluded that they had failed their clients and that they should be held in contempt.

64

### 1.      RLG and Watson Provided Woefully Deficient Legal Services

Local Bankruptcy Rule 2090-1(I) adopts the Virginia Rules of Professional Conduct (the "Virginia Ethical Rules") as the ethical standard governing the practice of law before this Court. LBR 2090-1(I). "Those Rules outline the mandatory minimum level of acceptable conduct for attorneys." *In re Alvarado*, 363 B.R. at 490 (citing *In re Soulisak*, 227 B.R. 77, 80 (Bankr. E.D. Va. 1998)). Any act or omission by an attorney that violates the Virginia Ethical Rules constitutes "misconduct." LBR 2090-1(I)(1)(a). This Court is empowered to discipline any attorney that has committed misconduct, LBR 2090-1(I)(2), including the imposition of sanctions, *see In re Johnson*, 2008 WL 183342, at *5, 2008 Bankr. LEXIS 164, at *13 (citing *In re Computer Dynamics*, 252 B.R. at 64).

This Court may regulate and sanction as appropriate both Watson and RLG. "[A] court's inherent authority to regulate the practice privileges of those who come before it is not cabined to attorneys. Instead, a court may sanction a law firm for the actions of its partners." *Allen v. Fitzgerald*, 590 B.R. 352, 357 (W.D. Va. 2018). As an attorney admitted to practice before this Court and in the Commonwealth of Virginia, Watson is unquestionably subject to the Virginia Ethical Rules. RLG is also subject to the Virginia Ethical Rules by virtue of Local Bankruptcy Rule 2090-1. Additionally, Rule 8.5 of the Virginia Ethical Rules provides that "[a] lawyer not admitted in Virginia is also subject to the disciplinary authority of Virginia if the lawyer provides, holds himself out as providing, or offers to provide legal services in Virginia." Va. R. Prof'l Conduct 8.5(a). RLG held itself out to the public as offering bankruptcy legal services in the Commonwealth of Virginia and contracted with the Affected Debtors to do so. As such, the Virginia Ethical Rules also apply to RLG.

## 2.    Watson and RLG Violated the Duty of Competence

"A lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  Va. R. Prof'l Conduct 1.1.  The comments to the Rule further expound that "[c]ompetent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners.  It also includes adequate preparation."  *Id.* cmt. 5.

"Adequate and competent legal representation in connection with a bankruptcy case requires time to be spent before the filing of the bankruptcy case."  *In re Green*, No. 20-03190-HB, 2021 WL 5177427, at *11, 2021 Bankr. LEXIS 3059, at *29 (Bankr. D.S.C. Nov. 3, 2021).  "An attorney who seeks to represent a debtor in a bankruptcy case has a duty to analyze the client's financial situation, advise the client about whether to file for bankruptcy and if so, under what chapter, and assist the client in completing the petition, schedules, statements, and other documents necessary for the filing."  *In re White*, 659 B.R. 68, 79 (Bankr. D.S.C. 2024).  "An attorney is required to perform a reasonable inquiry to include interviewing the client, requiring the client to produce relevant information, reviewing the client's financial documents and other information, and resolving any inconsistencies prior to filing the case."  *In re Burnett*, No. 21-02018-dd, 2022 WL 802586, at *6, 2022 Bankr. LEXIS 684, at *14 (Bankr. D.S.C. Mar. 16, 2022) (citing *In re Kincaid*, Case No. 19-70433, 2021 WL 5858895, at *7-8, 2021 Bankr. LEXIS 3357 *24 (Bankr. C.D. Ill. 12/9/2021)).

Watson and RLG failed to provide the Affected Debtors with competent representation from the inception of each attorney-client relationship until Mr. Sandler's substitution.  The evidence presented provides that upon contacting RLG, the Affected Debtors met with either non-lawyer professionals or lawyers not licensed to practice law in the Commonwealth of Virginia.

The Affected Debtors then entered into engagement agreements with RLG, signed by Wajda – yet another attorney who is not qualified to practice before this Court.  After engaging RLG, it was non-lawyers who consulted with the Affected Debtors.  Non-lawyers prepared the bankruptcy petitions for the Affected Debtors and compiled draft schedules and statements for them.  After the draft bankruptcy documents had been prepared for filing, the Affected Debtors did not have an opportunity to review the documents with an attorney licensed to practice in the Commonwealth of Virginia prior to signing them.  Instead, they were instructed to watch pre-recorded videos and to sign the documents regardless of any inaccuracies therein.

The evidence further establishes that the first and only opportunity that the Affected Debtors had to seek the advice of a duly licensed Virginia counsel was a single brief phone call, during which it appears that no actual advice was given and no analysis was performed.  Instead, it appears that Watson was given the completed files, at which point RLG had already "analyzed" the financial situation of the Affected Debtors and had determined the appropriate chapter under which they were to file.  Unfortunately for Ms. Poulston, RLG got it wrong.  RLG decided to resolve less than fifteen thousand dollars that Ms. Poulston had in unsecured debt by filing a Chapter7 bankruptcy case when she owned an unencumbered Residence.  To compound its mistake, RLG failed to claim any exemption for Ms. Poulston in her Residence.  This advice, if indeed any had been given, does not rise to the lowest level of reasonableness.  No argument can be garnered for how this kind of representation met the minimal standard of competence.

Ineptitude did not end for Watson and RLF upon filing of the petitions for the Affected Debtors.  RLG and Watson repeatedly failed to provide minimally competent legal services throughout the bankruptcy process.  In every case RLG filed, the schedules and statements were rife with errors, omissions, and inconsistencies – many facially apparent.  When these issues were

brought to the attention of Watson and RLG, they failed to file the necessary amendments to

correct the inaccuracies.  RLG and Watson failed to provide the U.S. Trustee and the Chapter 7

Trustees with the necessary information they required.  This was routine information the Affected

Debtors were obligated to provide.  Worse yet, the Affected Debtors had previously provided the

information to their lawyers.  RLG and Watson simply failed to deliver the requested information

to the U.S. Trustee and the Chapter 7 Trustees on behalf of their clients.  At each of the § 341

meetings of creditors conducted in the cases of the Affected Debtors, Watson was unprepared to

answer basic questions.  Questions were met with either tired excuses of unresolved computer

problems or unkept promises to investigate.  In every case, the Chapter 7 Trustee was forced to

adjourn the Affected Debtor's meeting of creditors.  Not only did these adjournments result in

unnecessary delay and the expenditure of substantial time and resources of the U.S. Trustee and

the Chapter 7 Trustees assigned to the cases, but also the Affected Debtors had to take time off of

work, sometimes at the risk of losing their jobs.  The adjournments unnecessarily delayed the

timely receipt of the Affected Debtors' discharges.  The Court finds that Watson and RLG failed

to meet their duty of competence under Virginia Ethical Rule 1.1.

### 3.    Watson and RLG Failed to Exercise Requisite Diligence

"A lawyer shall act with reasonable diligence and promptness in representing a client."  Va

R. Prof'l Conduct 1.3(a).  The comments to the Rule further provide:

> Perhaps no professional shortcoming is more widely resented than
> procrastination.  A client's interests often can be adversely affected
> by the passage of time or the change of conditions . . . . Even when
> the client's interests are not affected in substance, however,
> unreasonable delay can cause a client needless anxiety and
> undermine confidence in the lawyer's trustworthiness.

Va. R. Prof'l Conduct 1.3(a) cmt. 3.  RLG and Watson failed to take timely action in the Affected

Debtors' bankruptcy cases, causing great anxiety and raising valid concerns about the quality of

representation they were receiving.  It caused Ms. Russell to break down in tears at her adjourned § 341 meeting. The unreasonable procrastination of RLG and Watson affected Ms. Pauley and Ms. Linderman interests in substance.

Ms. Pauley engaged RLG in August 2022 and paid the entirety of RLG's fee on February 22, 2023.  Inexplicably, RLG did not file the Pauley Petition until July 3, 2024 – seventeen months later.  The information contained in the Pauley Schedules, Pauley SOFA, Pauley SOI, and the Original Pauley Form 122A-1 were all out of date by the time the Pauley Petition was eventually filed.  No reasonable explanation was given to explain the delay in filing the Pauley Petition.

Due to the delay in filing her bankruptcy case, Ms. Pauley was required to take (and pay for) the mandatory pre-petition credit counseling course at least twice.  During the time after Ms. Pauley had entered into the Chapter 7 Retainer Agreement with RLG and had paid its fee, Ms. Pauley's wages were garnished in the amount of $1,487.92.  Had RLG timely filed the Pauley Petition, this garnishment would not have occurred.

The duty of diligence required RLG and Watson to timely respond to the Ineligibility Notice issued in Ms. Linderman's case to ensure that Ms. Linderman was not penalized for a bankruptcy case she did not file.  RLG and Watson failed to do so.  Having failed to timely respond to the Ineligibility Notice, the duty of diligence required RLG and Watson to move to vacate the Ineligibility Order.  They only did so after months of delay upon the prodding of the U.S. Trustee.  The duty of diligence then required RLG and Watson to properly set the Motion to Vacate for hearing or otherwise bring the matter before the Court.  They never did.  That required the intervention of Mr. Sandler.  Because of the procrastination of RLG and Watson, Ms. Linderman did not timely receive her discharge.

The Court finds that Watson and RLG did not act with "reasonable diligence or promptness" under Virginia Ethical Rule 1.3(a).in their representation of the Affected Clients.

### 4.      Watson and RLG Did Not Sufficiently Communicate with the Affected Clients

One of the most fundamental obligations that attorneys have is the duty to communicate with their clients.  The Virginia Ethical Rules requires that counsel "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."  Va R. Prof'l Conduct 1.4(a).  RLG and Watson failed to meet this most basic responsibility.  The uncontroverted evidence is that none of the Affected Debtors could ever reach Watson.  Emails and phone calls went unanswered.  On the one occasion when Watson actually picked up the phone, Watson told Mr. Lee that he was busy and would call Mr. Lee back.  Lee Ex. 105 15:14-16.  Not only did Watson fail to return Mr. Lee's call, all of Mr. Lee's calls then went directly to voicemail.  *Id.* 15:16-18.  Having no luck with contacting Watson directly, the Affected Debtors turned to RLG for assistance only to be dismissed rudely and told that attorneys are very busy.  *E.g.*, Russell Ex. 118 6:7-23, 8:16-24; Linderman Ex. 111 9:12-21.

Ms. Poulston's case represents the most egregious failure of communication.  In addition to the duty to reasonably respond to clients, "[a] lawyer shall inform the client of facts pertinent to the matter and of communications from another party that may significantly affect . . . resolution of the matter."  Va R. Prof'l Conduct 1.4(c).  "A lawyer may not withhold information to serve the lawyer's own interest or convenience."  Va R. Prof'l Conduct 1.4 cmt. 7.  Ms. Poulston's case was ripe for dismissal due to RLG's failure to timely file the required credit counseling certificate.  The Court conducted three hearings on the matter, which culminated with a show cause hearing in order to get Watson and RLG to finally docket the credit counseling certificate.  RLG failed to notify Ms. Poulston of any of the three hearings in her case and failed to explain to her how the incompetence of Watson and RLG might have resulted in the dismissal of her bankruptcy case.

*See* Poulston Ex. 107 14:8-15:18. The failure of RLG and Watson to keep the Affected Debtors reasonably informed about their cases and the consistent refusal of RLG and Watson to respond to the phone calls and email entreaties of the Affected Debtors violated the minimum standard of communication required under Virginia Ethical Rule 1.4(a) and falls far below the expectations of this Court for the attorneys practicing before it.

### 5.       RLG Is Responsible for Watson's Shortcomings

Mulcahy testified that "Watson was failing [to provide adequate legal services] and when the matters were brought to my attention, immediate action was taken." Jan. 21, 2025, Hr'g Tr. 45:20-21. The uncontroverted evidence presented to this Court, as well as Mulcahy's own testimony, belies this representation. Mulcahy acknowledged in his testimony that various of the Affected Debtors had contacted RLG with concerns about Watson's performance. Mulcahy explained RLG took action to alert its director of outside attorneys about the phone calls. The director of outside attorneys attempted to reach Watson on several occasions and was not able to receive a response. The director of outside attorneys then escalated the issue to Mulcahy, who attempted to contact Watson by phone and by email without response. Wajda also attempted to contact Watson without success. Mulcahy testified that RLG was concerned that Watson might have died.

There can be no doubt that RLG was aware that its employee was not acting diligently in his representation of RLG clients. But RLG took no affirmative steps at this point to ensure that the Affected Debtors were receiving adequate legal services. In fact, Mulcahy testified that "it was like he [Watson] abandoned the firm. Again, for two months, we never heard a word from him. . . . Finally he shows up two months later . . . just completely ignoring everything else that's been happening. We needed him at the time to get these cases corrected. He never did that." *Id.* 42:2-10.

Mulcahy's testimony conveniently leaves out his personal and firsthand knowledge of Watson's inadequate representation.  Mulcahy, Short, and other members of RLG knew for months that Watson was failing to provide basic legal services and yet did nothing to protect their clients. On September 11, 2024, the U.S. Trustee began to engage directly with RLG, through Mulcahy, concerning various issues in Mr. Lee's bankruptcy case.  Lee 329 Motion Ex. 102.  In the email exchange, the U.S. Trustee acknowledged that Mulcahy was likely "doing quite a bit of cleanup on [Watson's] cases."  *Id.*  However, neither RLG nor Mulcahy took the action requested in the September 11, 2024, email.  On September 20, 2024, the U.S. Trustee served Mulcahy, on behalf of RLG, with a copy of its response to the Motion to Vacate in Ms. Linderman's case.  The response detailed the concerns that the U.S. Trustee had with RLG's representation of Ms. Linderman.  Linderman Ex. 130.  RLG took no action in response.  On October 7, 2024, Mulcahy, on behalf of RLG, signed the Pauley Stipulation, thereby acknowledging that RLG had violated both the terms of its retainer agreement with Ms. Pauley and this Court's Local Bankruptcy Rules.  Global Ex. E.  RLG took no further action in response to the Pauley Stipulation. On October 10, 2024, RLG, by and through Mulcahy, endorsed the Order Approving Stipulation, which expressly set various limitations on RLG's ability to practice before this Court.  Specifically, Mulcahy agreed to "personally review all open cases filed by RLG . . . in the Eastern District of Virginia and take remedial action in each case as is necessary and as does not constitute the unlawful practice of law."  Despite affirmatively agreeing to this obligation, RLG took no further action in response to the Order Approving Stipulation.

Rule 5.1(c) of the Virginia Rules of Professional Conduct provides that a "lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if . . . the lawyer is a partner or has managerial authority in the law firm in which the other lawyer practices, or has

direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." RLG and Mulcahy had actual knowledge of Watson's incompetent representation as early as September, agreed to take remedial action in October, and yet failed to do anything until December when it finally engaged substitute counsel. There is no excuse for RLG's conduct. There is no excuse for Mulcahy's conduct. The Court finds that both RLG and Mulcahy violated Virginia Ethical Rule 5.1(c).

### 6.    Return of Attorneys' Fees Pursuant to 11 U.S.C. § 329(a)

The Court may review and determine the reasonable value of the services rendered by an attorney who has represented a debtor in, or in connection with, a bankruptcy case. 11 U.S.C. § 329; Fed. R. Bankr. P. 2017(a); *see Burd v. Walters* (*In re Walters*), 868 F.2d 665, 667 (4th Cir. 1989) (holding that the court has the "express power to review payments to attorneys for excessiveness" (citation omitted)). Debtor's counsel in a bankruptcy case must file a statement of compensation paid or agreed to be paid for legal services related to a bankruptcy case. 11 U.S.C. § 329(a). The Court is empowered to, upon motion or sua sponte, review the agreed-upon compensation and decide whether such compensation is excessive. Fed. R. Bankr. P. 2017(a). Counsel for the debtor bears the "burden of proving that the legal services provided were of reasonably equivalent value to the fees paid." *In re De Molina*, No. 09-14158-SSM, 2009 WL 5062395, *2, 2009 Bankr. LEXIS 4126, at *6-7 (Bankr. E.D. Va. Dec. 15, 2009). If the Court finds that the compensation exceeds the reasonable value of such services, the Court may cancel the agreement and order the attorney to return the funds. 11 U.S.C. § 329(b).

Judge St. John of this Court has previously determined that disgorgement of fees is appropriate where the petition and schedules filed on behalf of the debtor contain discrepancies, omissions, and inaccuracies. *In re De Molina*, 2009 WL 5062395, at *2, 2009 Bankr. LEXIS

4126, at *7 (citing *In re Nickerson*, No. 08-35234, 2009 WL 1587160, 2009 Bankr. LEXIS 1433

(Bankr. N.D. Ohio Apr. 16, 2009)).  For that reason alone, the Court finds that disgorgement of

the fees paid by the Affected Debtors is warranted.

Given the incompetent services rendered by and the unethical behavior of Watson and

RLG, the Court finds that the fees charged are excessive in relation to the services provided.  To

suggest that RLG completed the bare minimum would be inaccurate.  There was no sense of

urgency or accuracy present at any point during RLG's engagements in any of the Five Consumer

Bankruptcy Cases at Bar.  RLG filed the Affected Debtors' cases and then allowed them to

founder.  But for the intercession of the U.S. Trustee and the engagement of new counsel, it is

quite possible that these debtors' cases would have been dismissed, with prejudice.  *Cf. Sugar v.

Burnett*, 130 F.4th 358, 367-68 (4th Cir. 2025).

### 7.    Disgorgement of Attorneys' Fees Pursuant to 11 U.S.C. § 526

Section 526 of the Bankruptcy Code provides an alternate ground for disgorgement of

attorneys' fees.  Section 526 was enacted as part of the Bankruptcy Abuse and Consumer

Protection Act of 2005 to "protect[ ] debtors from falling victim to unscrupulous individuals," *In

re Paciocco*, Misc. Pro. No. 15-00302-KRH, 2015 WL 5178036, at *8, 2015 Bankr. LEXIS 2971,

at *26 (Bankr. E.D. Va. Sept. 3, 2015), by imposing additional standards of professional conduct

for persons qualifying as debt relief agencies, *Milavetz, Gallop & Milavetz, P.A. v. United States*,

559 U.S. 229, 233 (2010).

RLG and Watson are "debt relief agencies" as that term is employed in section 526.  11

U.S.C. § 101(12A); *Milavetz, Gallop & Milavetz, P.A.*, 559 U.S. at 239 ("[A]ttorneys who provide

bankruptcy assistance to assisted persons are debt relief agencies.").  Ms. Linderman, Ms. Pauley,

Ms. Russell, Mr. Lee, and Ms. Poulston are all "assisted persons" as such term is defined by the

Bankruptcy Code.  *See* 11 U.S.C. § 101(3).  Accordingly, section 526 applies to representation of these Affected Debtors by RLG and Watson.

Section 526(a)(1) prohibits a debt relief agency from "fail[ing] to perform any service that such agency informed an assisted person . . . it would provide in connection with a case or proceeding" under the Bankruptcy Code.  11 U.S.C. § 526(a)(1).  RLG agreed to provide, among other things, the following services to the Affected Debtors:

> 4. Review with the Client and sign the completed petition, statements, and schedules, as well as all amendments thereto, whether filed with the petition or later.
>
> 5. Timely prepare and file the Client's petition, statements, and schedules after receipt of all necessary documentation and payments from the Client.
>
> *****
>
> 3. Provide knowledgeable legal representation for the Client at the § 341(a) meeting of creditors and with regard to motion and/or any motion hearing during the case.
>
> 4. If the Attorney finds it necessary for another attorney to appear and attend the § 341(a) meeting or any court hearing, personally explains to the Client, in advance, the role and identity of the other attorney and provide the other attorney with the "file" in sufficient time to review it and properly represent the Client.
>
> *****
>
> 7. Timely prepare, file, and serve any necessary amended statements and schedules and any change of address, in accordance with information provided by the Client.
>
> 8. Be available to respond to the Client's questions throughout the term of the case.
>
> 9. Prepare, file, and serve timely modifications or amendments to the petition, schedules or statements, when necessary.
>
> *****

          14. Provide any other legal services necessary for the administration
          of this case before the bankruptcy court.

Global Ex. E at ¶ 3 & Ex. 1; Russell Ex. 101; Lee Ex. 113; Linderman Ex. 135.  The Court has found that RLG breached its retainer agreements and that RLG and Watson failed to provide the promised services.  As such, RLG and Watson have violated section 526(a)(1) of the Bankruptcy Code.

If a debt relief agency "intentionally or negligently fail[s] to comply with" section 526, that entity "shall be liable to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs."  11 U.S.C. § 526(c)(2)(A).  Moreover, if the debt relief agency has either "intentionally violated" or "engaged in a clear and consistent pattern or practice of violating" section 526(a), the court may either "enjoin the violation" or "impose an appropriate civil penalty."  *Id.* § 526(c)(5).  Intentionality may be established by circumstantial evidence.  *Layng v. Barclay* (*In re Mennona*), Adv. Pro. No. 22-1139 TBM, 2023 WL 149957, at *26, 2023 Bankr. LEXIS 60, at *74 (Bankr. D. Colo. Jan. 10, 2023).  Such circumstantial evidence may include "an attorney's failure to take legal obligations seriously or to make an effort to comply with the law."  *Id.*, 2023 Bankr. LEXIS 60, at *75.

In *In re White*, 659 B.R. 68 (Bankr. D.S.C. 2024), Judge Burris had occasion to determine whether RLG had intentionally violated section 526 of the Bankruptcy Code.  In that case, RLG had been engaged to attempt to stop a foreclosure.  However, RLG delayed filing a bankruptcy petition on behalf of the debtor for over five to six months after it was engaged and almost two months after foreclosure of the home had occurred.  Judge Burris found that "the failure here is not a 'simple error[ ]' that can 'be rectified through simple amendments,' but an irreversible, avoidable mistake that has set the Debtor's life down an unnecessary path."  *Id.* at 83.  Based upon

the facts presented as well as RLG's historic failure to have attorneys licensed to practice in South Carolina advise their clients prior to filing, the bankruptcy court in South Carolina determined that "the violations of § 526 in [the] case [before it] were intentional, and part of an intentional for-profit scheme, that Recovery failed to take its legal obligations seriously, and its Response shows a disregard for the truth and blames others – including the injured party – for its own shortcomings." *Id.* at 83-84.

The similarity that *In re White* has with the Five Consumer Bankruptcy Cases at Bar is astonishing.  There is no doubt that Watson and RLG were negligent in their incompetent representation of the Affected Debtors in the Five Consumer Bankruptcy Cases at Bar.  The Court finds under the circumstances evident in the Five Consumer Bankruptcy Cases at Bar that the inadequate representation that RLG and Watson provided the Affected Debtors was intentional and part of a clear and consistent pattern, as demonstrated by the number of inadequacies, misrepresentations, inaccuracies, failures, deficiencies, and derelictions that occurred in all of the cases involved.  *See In re Futreal*, 2016 Bankr. LEXIS 3974, at *34-37 (Westlaw cite unavailable) (finding pattern based on six cases with various procedural deficiencies).  Watson and RLG had full knowledge of the deficiencies in their clients' cases and took no corrective action.  This is exactly the type of unscrupulous conduct that Congress sought to curtail through the enactment of section 526.  Accordingly, the Court finds that the imposition of civil penalties is appropriate.

## 8.    Violation of 11 U.S.C. § 707(b)(4) and Bankruptcy Rule 9011

An attorney who presents a document to the Court certifies, among other things, that the allegations and factual contentions therein either have or will likely have evidentiary support. Fed. R. Bankr. P. 9011(b)(1).  If the Court finds an attorney has violated Bankruptcy Rule 9011, the Court may impose an appropriate sanction on any attorney, law firm, or party that committed the violation or is responsible for it.  Fed. R. Bankr. P. 9011(c).  "Absent exceptional circumstances,

a law firm must be held jointly responsible for a violation committed by its partner, associate, or

employee." Fed. R. Bankr. P. 9011(c)(1).  In a Chapter 7 bankruptcy case, if an attorney for the

debtor violates Bankruptcy Rule 9011, the Court may order:

> (i) the assessment of an appropriate civil penalty against the attorney for the debtor; and
>
> (ii) the payment of such civil penalty to the trustee, the United States trustee (or the bankruptcy administrator, if any).

11 U.S.C. § 707(b)(4)(B).  In addition to the requirements of Bankruptcy Rule 9011, the

Bankruptcy Code also provides that an attorney's signature on a petition certifies that "the attorney

has no knowledge after an inquiry that the information in the schedules filed with such petition is

incorrect."  *Id.* § 707(b)(4)(D).

The documents prepared by RLG and filed by Watson in the Five Consumer Bankruptcy

Cases at Bar violated both section 707(b)(4) of the Bankruptcy Code and Bankruptcy Rule 9011

in at least three different ways.  First, the information contained in the originally filed documents

was clearly erroneous, which both the U.S. Trustee and the Chapter 7 Trustees discovered after

their typical diligence investigations.  Second, having been informed about the errors and

inconsistencies, RLG and Watson took no corrective action, thereby continuing to represent to the

Court that the filings were correct.  Third, the documents RLG filed with the Court were

inconsistent with the documents actually signed by the Affected Debtors.  In other words, RLG

and Watson misrepresented that the documents filed with the Court had been signed by the

Affected Debtors.  Furthermore, it appears that Watson failed to satisfy section 707(b)(4)(D) of

the Bankruptcy Code insofar as there is no evidence that he made any inquiry into whether the

schedules that he filed were correct.

### 9.     Civil Contempt

"A bankruptcy court has the power, pursuant to 11 U.S.C. § 105(a)[,] to hold a party in civil contempt and award sanctions."  *Rountree v. Nunnery* (*In re Rountree*), 448 B.R. 389, 416 (Bankr. E.D. Va. 2011) (alterations in original) (quoting *In re Byrd*, Case No. 01-25006 TJC, 2007 WL 2884396, at *5, 2007 Bankr. LEXIS 3350, at *14 (Bankr. D. Md. Sept. 27, 2007), *aff'd sub nom. Byrd v. Hoffman*, Case No. CIV.A. AW-07-2960, 2008 WL 8883927, 2008 U.S. Dist. LEXIS 123715 (D. Md. July 31, 2008), *aff'd sub nom. In re Byrd*, 352 Fed. App'x 775 (4th Cir. 2009)). A finding of civil contempt requires the movant to show each of the following four elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (omissions and alterations in original) (quoting *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1405 (E.D. Va. 1992), *aff'd* 38 F.3d 133 (4th Cir. 1994)).

### A.     Violation of Sorgho Contempt Order

By filing the Seeley Petition, the Pauley Petition, the Russell Petition, the Lee Petition, and the Poulston Petition, RLG violated the terms of the Sorgho Consent Order.  RLG argues that it should not be held in contempt because it did not know its actions violated the Sorgho Consent Order.  RLG defends on the grounds that it "understood that as long as it moved expeditiously in the process of obtaining the certificate, according to the appropriate Virginia statutes, (section 54.1-3902 of the Code of Virginia and Part Six, Section IV, Paragraph 14 of the Rules of the Supreme Court of Virginia), RLG would be in compliance with the proposed consent order."  Am.

Resp. 3, *In re Recovery Law Grp.*, Misc. Pro. 24-301-KRH, ECF No. 39. RLG fully lays the blame

on Watson, stating that, "[t]he bar on filings without a certificate was not communicated by Watson

to RLG" and as such, RLG "considered itself in compliance with the court order by completing

the application paperwork." *Id.* at 3-4.

This argument fails for two reasons. First, "the focus of the court's inquiry in civil

contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in

complying with the order, but whether in fact their conduct complied with the order at issue." *In*

*re Wolfe*, Adv. Pro. No. 09-1326, 3:10-01, 2012 WL 734151, at *7, 2012 Bankr. LEXIS 915, at

*22 (Bankr. N.D.W. Va. Mar. 5, 2012) (quoting *Rountree v. Nunnery* (*In re Rountree*), 448 B.R.

389, 417 (Bankr. E.D. Va. 2011)). There is no question that RLG failed to comply with the terms

of the Sorgho Consent Order. Second, even if subjective intent were relevant, RLG is bound by

its agent and employee, Watson. The evidentiary record before the Court is that Watson, both as

agent for RLG and in his personal capacity, agreed to the terms of the Sorgho Consent Order.

"[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice

of all facts, notice of which can be charged upon the attorney.'" *Adams v. Halls* (*In re Adams*),

Adv. Pro. No. 22-03046-KRH, 2023 WL 4163481, at *3, 2023 Bankr. LEXIS 1622, at *7 (Bankr.

E.D. Va. June 23, 2023) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)). RLG

"voluntarily chose this attorney as [its] representative in the action, and [it] cannot now avoid the

consequences of the acts or omissions of this freely selected agent." *Link*, 370 U.S. at 633-34.

Accordingly, the Court finds RLG in contempt of the Sorgho Consent Order.

Section 54.1-3902(A) of the Virginia Code prohibits any entity from "render[ing] the

professional services of attorneys in this Commonwealth unless the professional corporation,

professional limited liability company, or registered limited liability partnership is registered under

this section."  *See also* Va. Code § 13.1-549.2 ("Before any professional corporation may engage in the practice of law in this Commonwealth, it shall first obtain and maintain a registration certificate required for such corporation.").  Virginia law further provides that "[a]ny person who practices law without being authorized or licensed shall be guilty of a Class 1 misdemeanor."  Va Code § 54.1-3904.  The statute does not define the term "persons."  *But see Unauthorized Practice Rules*, VSB, https://vsb.org/Site/01_About/RulesRegulations/Unauthorized-Practice-Rules.aspx (last visited Feb. 4, 2025), *archived at* https://perma.cc/Z63S-D4BU ("Any person *or entity* who practices law without being licensed or otherwise authorized to practice law shall be guilty of a Class 1 misdemeanor." (emphasis added)).  As such, the Court makes no finding as to whether RLG has violated section 54.1-3904 of the Virginia Code; but it does hold RLG in civil contempt for violation of the Sorgho Consent Order.

### B. Violation of this Court's December 18, 2024, Ruling Ordering Immediate Disgorgement and Repayment of Fees

At the conclusion of the December 18, 2024, hearing, the Court ordered RLG to immediately return the fees paid to RLG by Ms. Linderman, Ms. Russell, Mr. Lee, and Ms. Poulson.  Dec. 18, 2024, Hr'g Tr. 64:20-23, *In re Recovery Law Grp.*, Misc. Pro. 24-301-KRH, ECF No. 53 at 64.  During the January 21, 2024, hearing, Mulcahy testified that RLG had purposefully delayed refunding the fees the Court had ordered it to immediately repay, as it attempted to work out a global settlement with the U.S. Trustee.[43]  Jan. 31, 2024, Hr'g Tr. 43:24-44:1, *In re Recovery Law Grp.*, Misc. Pro. No. 24-301-KRH, ECF No. 55 at 43-44.  At no point did RLG seek relief from the Court's order that it immediately repay the fees.  After it became

---

[43]  Mulcahy had previously attempted to negotiate with the U.S. Trustee regarding RLG's violation of this Court's orders.  On September 13, 2024, the U.S. Trustee advised Mulcahy that it was not in a position to negotiate a resolution for a violation of a court order.  Global Ex. I.  The Court is perplexed why Mulcahy would continue to attempt to negotiate the impossible months later.

clear that the parties would be unable to reach a compromise, RLG stated that it mailed refunds to the affected debtors during the week of January 13, 2025 – almost a month after being ordered by the Court to immediately do so.  *Id.* 44:3-10.

RLG knowingly and willingly violated an order of this Court by delaying payment of the refunds without leave of Court and without the consent of the Affected Debtors – their clients. The refunds represent real money to Chapter 7 debtors.  Instead of acting in accordance with their clients' best interests, RLG focused instead on minimizing its exposure at the expense of its clients. The Court finds such self-serving behavior to satisfy the four *Ashcroft* elements and holds RLG in contempt of its December 18, 2024, ruling.  *See* 218 F.3d at 301.

## *Remedies*

### 1.    **Monetary Sanctions**

"The Bankruptcy Court's sanction power, allowing it to discipline those attorneys who appear before it, extends to requiring deficiently-performing attorneys to reimburse those who were negatively affected by their wrongdoing."[44]  *In re Parker*, Civil Action No. 3:14cv241, 2014 WL 4809844, at *8, 2014 U.S. Dist. LEXIS 136355, at *20 (E.D. Va. Sep. 26, 2014) (citations omitted).  The foregoing facts establish a continued pattern of insufficient services, ignored court orders, and blame-shifting at every opportunity.  The Court finds that the imposition of the following monetary sanctions jointly and severally against Watson and RLG are appropriate under the circumstances.[45]

---

[44]    In addition to the Court's inherent authority to impose sanctions, the Court is statutorily authorized to impose civil penalties due to RLG and Watson's violation of Bankruptcy Rule 9011.  11 U.S.C. § 707(b)(4)(B).

[45]    The Court does not award additional sanctions in Ms. Pauley's case, having previously addressed Ms. Pauley's case through the Order Approving Pauley Stipulation and the Order Approving Stipulation.

The Court shall order sanctions payable to Ms. Linderman in the amount of $10,000.  This amount is intended to compensate Ms. Linderman for the delay in receiving her discharge due to RLG's failure to provide documents and amendments, the uncertainty that Ms. Linderman may receive a discharge due to RLG's failure to appropriately respond to the Ineligibility Notice, and the numerous appearances Ms. Linderman was required to make at numerous adjourned § 341 meetings of creditors and at hearings before this Court.  Ms. Linderman, a single parent with an infant, was required to take substantial leave from her job, putting her employment at risk.[46]

The Court finds that the imposition of sanctions in the amount of $8,000 payable to Ms. Russell is appropriate under the circumstances.  This amount is intended to compensate Ms. Russell for the delay in receiving her discharge due to RLG's failure to provide documents and amendments, the numerous appearances Ms. Russell was required to make at various adjourned § 341 meetings of creditors, and the uncertainty of having to rely on mail forwarding to receive notices in her case solely because RLG refused to file a simple change of address form on her behalf.  Ms. Russell also lost time from work due to the unnecessary continued § 341 meetings she was required to attend.

The Court imposes sanctions in the amount of $5,000 payable to Mr. Lee.  This award is intended to compensate Mr. Lee for the delay in receiving his discharge through RLG's failure to provide documents and to file amendments and RLG's failure to appear at his meeting of creditors. The award is also intended to fairly compensate Mr. Lee for his time in appearing at numerous

---

[46] While the Court does not base its award on the emotional harm caused by RLG and Watson's ineffective representation, the Court would be remiss not to comment upon the awful – and avoidable – circumstances in which Ms. Linderman found herself.  Ms. Linderman testified that she filed her bankruptcy case to obtain a fresh start after escaping domestic violence, and that receiving a discharge was important for her financially as well as symbolically.  Ms. Linderman further testified that she has sought therapy to address the fear and anxiety caused by her prolonged bankruptcy case – something this bankruptcy case should have mitigated instead of exacerbated.

§ 341 meetings of creditors necessitated by his counsel's incompetence. Mr. Lee was required to take time off from work to do so.

Finally, the Court shall order the imposition of $20,000 in sanctions payable to the Chapter 7 trustee of Ms. Poulston's bankruptcy estate. When RLG improperly chose to advise Ms. Poulston to file a Chapter 7 bankruptcy, RLG put Ms. Poulston's Residence at risk of liquidation. The only way to ensure that Ms. Poulston can retain her home and that the Chapter 7 Trustee can still fulfill the fiduciary obligation she owes to the creditors of the bankruptcy estate is to ensure a 100 percent distribution to the creditors in Ms. Poulston's case. Given the amount of unsecured debt in her case, as well as the projected administrative costs, the Court finds that an award of $20,000 is sufficient. After completing administration of the estate, the Chapter 7 Trustee shall return any excess funds to Ms. Poulston as compensation for the delay in receiving her discharge and the uncertainty she encountered regarding her family home.

RLG and Watson did not only harm their clients but created unnecessary and excessive work for the Chapter 7 Trustees in these cases. Mr. Barrett and Ms. West were required to expend an extraordinary amount of time and effort in these cases to simply ensure that the Affected Debtors received the services that they had contracted and paid RLG to perform.

As Chapter 7 trustees are paid their statutory commissions pursuant to section 326(a) of the Bankruptcy Code, neither Mr. Barrett nor Ms. West kept contemporaneous time records in these matters. Mr. Barrett and Ms. West each engage support staff to assist them with their trustee cases – those staff members also do not routinely keep time records. While Mr. Barrett and Ms. West each filed declarations as to the additional work they were required to perform, both Chapter 7 Trustees acknowledged that the submitted estimated hours were below that which had actually been expended and did not include any billable time allocable to their support staff. Accordingly,

the Court finds that the awards reflected below are appropriate in light of the circumstances of these cases.

Ms. West serves as the interim Chapter 7 Trustee in Ms. Linderman and Ms. Poulston's bankruptcy cases.  West Decl., *In re Recovery Law Grp.*, Misc. Pro. No. 24-301-KRH, ECF No. 40.  Ms. West was licensed to practice in Virginia in 1997 and is admitted to the bar of this Court. *Id.* ¶ 1.  In addition to her service as a Chapter 7 Trustee, she is also a shareholder and director in the law firm of Spotts Fain PC, primarily practicing in the area of bankruptcy and creditors' rights. *Id.*  Ms. West's hourly rate for trustee matters is $405 per hour.  *Id.*  ¶ 11.  Ms. West compared the time she had expended in her administration of Ms. Linderman's and Ms. Poulston's cases to her time expended in other Chapter 7 cases to determine excess time.  In each case, the actions or inactions of RLG and Watson caused Ms. West and her staff to spend significant, uncompensated time preparing for and conducting continued § 341 meetings, and communicating with RLG, Watson, and the U.S. Trustee.  Ms. West also spent not less than four hours attending the Court's hearing on December 18, 2024, to address any questions or concerns that the Court may have had. Finally, Ms. West was required to prepare an affidavit attesting to the time and energy expended upon these cases.  Accordingly, the Court shall award Ms. West sanctions in the amount of $5,000 as compensation for her services in these cases.

Mr. Barrett serves as the interim Chapter 7 Trustee in Ms. Russell's and Mr. Lee's bankruptcy cases.  Barrett Decl., *In re Recovery Law Grp.*, Misc. Pro. No. 24-301-KRH, ECF No. 40.  Mr. Barrett is a partner in the law firm of Kutak Rock and is admitted to practice before this Court.  *Id.* ¶ 1.  Mr. Barrett's discounted 2024 hourly rate for trustee matters was $695 per hour. *Id.* ¶ 6.  In each case, the actions or inactions of RLG and Watson caused Mr. Barrett and his staff to spend significant, uncompensated time preparing for and conducting continued § 341 meetings,

and communicating with RLG, Watson, and the U.S. Trustee.  Mr. Barrett also spent not less than four hours attending the Court's hearing on December 18, 2024, to address any questions or concerns that the Court may have had.  Finally, Mr. Barrett was required to prepare an affidavit attesting to the time and energy expended upon these cases.  Accordingly, the Court shall award Mr. Barrett sanctions in the amount of $5,000 as compensation for his services in these cases.

### 2.      Revocation of Privilege to Practice Law Before the Court

This Court has the inherent authority to suspend or disbar lawyers.  *In re Snyder*, 472 U.S. 634, 643 (1985); *In re Evans*, 801 F.2d 703, 706 (4th Cir. 1986).  This authority also extends to the "nonmembers of the bar who engage in unauthorized activities affecting the court."  *Allen v. Fitzgerald*, Case No. 5:18-CV-00057, 2019 WL 6742996, at *5, 2019 U.S. Dist. LEXIS 213990, at *13 (W.D. Va. Dec. 11, 2019) (quoting *United States v. Johnson*, 327 F.3d 554, 560 (7th Cir. 2003)).  Accordingly, this Court has the authority to condition or revoke the privilege that both Watson and RLG enjoy to appear before this Court.  Having found *supra* that RLG and Watson "engaged in a clear and consistent pattern or practice of violating" section 526(a) of the Bankruptcy Code, the court must now find a way to "enjoin the violation."  11 U.S.C. § 526(c)(5).

Past promises by RLG to reform its practices and conform its conduct to abide by the Orders issued and the Rules adopted not only by this Court but other courts throughout the country have proven to be inherently unreliable.  The Court concludes that compliance can be assured only by suspending RLG from practicing law before the United States Bankruptcy Court for the Eastern District of Virginia for a period not less than two years.  After the expiration of the two-year ban, RLG may reapply to the Court, after giving 60 days' advance notice to the office of the U.S. Trustee and to the Virginia State Bar, to have its privilege to practice law in this jurisdiction restored.

The Court finds that Watson failed to show any cause for why he should not be held in contempt for violating and ignoring the orders issued by this Court. Accordingly, the Court finds it necessary and appropriate to disbar Watson from the practice of law before the United States Bankruptcy Court for the Eastern District of Virginia. Watson's CM/ECF access rights shall be discontinued immediately.

### *Conclusion*

RLG took complete advantage of very vulnerable consumer debtors at the weakest moments of their lives. The Affected Debtors placed their future in the hands of RLG, desperate for a fresh start. RLG lured the Affected Debtors off the internet with the false promise of alleviating financial distress and eliminating debt. RLG betrayed that promise. RLG exacerbated the stress the Affected Debtors were under rather than alleviating it. RLG literally brought its vulnerable clients to tears. RLG was focused solely on "making money" off the Affected Debtors, "while taking no responsibility for [its] clients and attempting to isolate the firm from any liability related to client representation by associating a local 'partner.' The actions (or lack thereof) of [RLG and Watson] are offensive both to the court and to the many attorneys who uphold the high standards demanded by the legal profession." *In re Banner*, 2016 WL 3251886, at *9, 2016 Bankr. LEXIS 2214, at *29. The Court is deeply disappointed by the incompetence, indifference, inconsideration, inattention, and utter disrespect RLG and Watson exhibited. Together they completely abrogated all responsibility for the duties they owed contractually, professionally, and ethically to the individuals they had the great privilege to represent.

Separate Orders shall issue.

Dated:   April 7, 2025

/s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:   April 7, 2025

**Copies to:**

**Recovery Law Group**
c/o Nicholas M. Wajda, Managing Partner
309 W 11th Street
Anderson, IN 46016

**Wajda Law Group, APC**
c/o Nicholas M. Wajda, Registered Agent
400 Continental Blvd, 6th Floor
El Segundo, CA  90245

**Thomas Watson**
Recovery Law Group
3900 Westerre Pkwy, Ste 300
Richmond, VA 23233

**Peter J. Mulcahy**
Recovery Law Group
309 W. 11th Street
Anderson, IN 46016

**Michael Sandler**
Recovery Law Group
3900 Westerre Pkwy
Ste 300
Richmond, VA 23233

**Nisha R. Patel**
**Shannon F. Pecoraro**
Office of the U.S. Trustee
701 E. Broad Street
Suite 4304
Richmond, VA 23219

**Matthew W. Cheney**
Office of the United States Trustee
701 East Broad Street - Suite 4304
Richmond, VA 23219

**Trisha Lynn Linderman**
7102 Branched Antler Court
Midlothian, VA 23112

**Jeannette Levetas Pauley**
2625 Hungary Spring Rd
Henrico, VA 23294

**JoAnn Elizabeth Russell**
4532 Sauk Ave.
San Diego, CA 92117

**Shawn Corigan Lee**
775 Mosquito Point Rd
White Stone, VA 22578

**Jennifer Rebecca Poulston**
11127 Farmville Rd
Farmville, VA 23901

**Peter J. Barrett**
1021 East Cary Street
Suite 810
Richmond, VA 23219

**Jennifer J. West**
Spotts Fain PC
411 E. Franklin Street, Suite 600
Richmond, VA 23219